UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HALCYON TELEVISION, LLC,

               Plaintiff,

      v.

JAMES L. MCMURTRY and NORMA
FAYE KESEY MCMURTRY,

             Defendants.

Case No. 1:22-cv-04608-AKH

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

REITLER KAILAS & ROSENBLATT LLP
885 THIRD AVENUE, 20TH FLOOR
NEW YORK NEW YORK 10022
(212) 209-3050

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF RELEVANTS FACTS .................................................................................. 2

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT .............................................................................................................................. 8

I.      Defendants Are Entitled To Judgment On Plaintiff's Claims. ........................................ 8

   A.   Defendants' Exercise Of Their Termination Rights Was Properly Taken Under Section
        203 of the Copyright Act. ........................................................................................... 8

   B.   The 1993 Agreement Neither Revokes, Terminates, Nor Replaces The 1985 Grant. ..... 9

      1.   Contractual Termination and Revocation Require Clear Manifestation Of Intent. ...... 9

      2.   The 1993 Agreement Does Not Manifest Any Intent To Cancel Or Supersede The
           1985 Grant. ......................................................................................................... 12

   II.  Plaintiff's Pre-Suit Admissions Contradict Its Litigation Posture. .................................. 14

CONCLUSION .......................................................................................................................... 17

## <u>OTHER DOCUMENTS SUBMITTED IN SUPPORT OF MOTION</u>

Declaration of Julie B. Wlodinguer in Support of Defendants' Motion dated November 7, 2022

      A. Exhibit A to Wlodinguer Declaration: Plaintiff's Complaint with Exhibit

            Exhibit A to Complaint, February 2022 Termination Notice

      B. Exhibit B to Wlodinguer Declaration: Defendant's Answer with Exhibits

            Exhibit A to Answer, 1985 Agreement

            Exhibit B to Answer, 1993 Agreement

            Exhibit C to Answer, October 2021 Correspondence

            Exhibit D to Answer, December 2021 Correspondence

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*,
    537 F. Supp. 3d 533 (S.D.N.Y. 2021)..................................................................... 7

*Alvarado v. Kerrigan*,
    152 F.Supp 2d 350 (S.D.N.Y. 2001)....................................................................... 5

*ANI Pharms., Inc. v. Cabaret Biotech Ltd.*,
    No. 19 CIV. 5409 (AKH), 2020 WL 1989400 (S.D.N.Y. Apr. 26, 2020)............... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 6

*Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*,
    820 F. Supp. 2d 490 (S.D.N.Y. 2011).................................................................... 5

*Bank of New York v. First Millennium, Inc.*,
    607 F.3d 905 (2d Cir. 2010).................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 6

*Broadview Chem. Corp. v. Loctite Corp.*,
    417 F.2d 998 (2d Cir. 1969).................................................................................... 7

*CJI Trading LLC v. JPMorgan Chase Bank, N.A.*,
    No. 20 CIV. 4294 (AKH), 2021 WL 2036678 (S.D.N.Y. May 21, 2021).............. 6

*Classic Media Inc. v. Mewborn*,
    532 F.3d 978 (9th Cir. 2008)............................................................... 10, 11, 12, 14

*DC Comics v. Pac. Pictures Corp.*,
    545 F. App'x 678 (9th Cir. 2013) .......................................................................... 10

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562 (N.Y. 2002).................................................................................... 10

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010).................................................................................... 6

*Instead, Inc. v. ReProtect, Inc.*,
    349 F. App'x 631 (2d Cir. 2009............................................................................. 14

*Jones v. Trice*,
  202 A.D.2d 394 (2d Dep't 1984) ................................................................ 9

*Kertesz v. Gen. Video Corp.*,
  2010 WL 11506390 (S.D.N.Y. Mar. 31, 2010) ........................................ 5

*L–7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ................................................................ 6, 15

*Labajo v. Best Buy Stores, L.P.*,
  478 F. Supp. 2d 523 (S.D.N.Y. 2007) .................................................. 6, 16

*Microban LLC v. InspireMD, Inc.*,
  2018 WL 522335 (S.D.N.Y. Jan. 22, 2018) ......................................... 6, 16

*Milne ex rel. Coyne v. Stephen Slesinger Inc.*,
  430 F.3d 1036 (9th Cir. 2005) ........................................................ 10, 11, 12

*Nieman v. Syracuse Univ. Off. of Hum. Res.*,
  2013 WL 2445098 (N.D.N.Y. June 5, 2013) ............................................ 6

*Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*,
  100 A.D.2d 865 (2d Dep't 1984) ............................................................ 9

*Penguin Group (USA) Inc. v. Steinbeck*,
  537 F.3d 193 (2d Cir. 2008) ......................................................... passim

*Perez v. Wells Fargo N.A.*,
  774 F.3d 1329 (11th Cir. 2014) ........................................................... 14

*Postlewaite v. McGraw-Hill, Inc.*,
  411 F.3d 63 (2d Cir. 2005) ............................................................... 9, 10

*Rojas v. Berryhill*,
  368 F. Supp. 3d 668 (S.D.N.Y. 2019) .................................................... 6

*Sellers v. M.C. Floor Crafters, Inc.*,
  842 F.2d 639 (2d Cir. 1988) ............................................................... 5

*United Specialty Ins. Co. v. CDC Hous., Inc.*,
  233 F. Supp. 3d 408 (S.D.N.Y. 2017) ................................................... 5

*Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*,
  2017 WL 4402567 (S.D.N.Y. Sept. 30, 2017) ...................................... 6, 16

*Vayngurt v. Sw. Credit Sys., L.P.*,
    No. 16CV2261ARRVMS, 2016 WL 6068132 (E.D.N.Y. Oct. 14, 2016)................................. 7

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157 (N.Y. 1990).................................................................................................. 10

**Statutes**

17 U.S.C. §203 .......................................................................................................... 1, 3, 4, 8, 14

17 U.S.C. §203(a)(2) ........................................................................................................... 3, 8

17 U.S.C. §203(a)(3) ................................................................................................................ 8

17 U.S.C. §203(a)(4)(A) ......................................................................................................... 9

17 U.S.C. §304 ...................................................................................................................... 11

Copyright Act................................................................................................................ 1, 10, 11

**Other Authorities**

H.R. REP. 94-1476, 124, 1976 U.S.C.C.A.N. 5659, 5740 .......................................................... 8

**Rules**

Fed.R.Civ.P. 10(c) ................................................................................................................. 15

Fed.R.Civ.P. 12(b)(6)............................................................................................................... 6

Fed.R.Civ.P. 12(c) ......................................................................................................... passim

Defendants James L. McMurtry ("James") and Norma Faye Kesey McMurtry ("Norma" and collectively with James, "Defendants"), by and through undersigned counsel, respectfully submit this memorandum of law in support of their motion for judgment on the pleadings against Plaintiff Halcyon Television, LLC ("Halcyon" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(c).

## **PRELIMINARY STATEMENT**

Halcyon commenced this lawsuit against James and Norma, the surviving son and widow, respectively, of the award-winning author Larry J. McMurtry ("Larry"), to thwart their lawful exercise of their statutory right pursuant to Section 203 of the United States Copyright Act of 1976, (the "Copyright Act") to terminate a 1985 grant of copyrights in Larry's popular and critically acclaimed novel "Lonesome Dove" (the "Work" or "Lonesome Dove") to Halcyon's predecessor in interest, Motown Productions.

Halcyon's sole claim in this action is that Larry's 1993 grant of film and television rights in a <u>different</u> work authored by Larry, to a <u>different</u> predecessor in interest to Halcyon, allegedly "revoked, terminated, and replaced" the grant of rights made by Larry in 1985 with respect to Lonesome Dove and purportedly extinguished James and Norma's right to terminate the 1985 grant. Complaint (Doc. 1)[1], ¶¶34-35. Halcyon's claim is contradicted by the text of the agreements themselves. The 1993 agreement is devoid of any express language revoking or terminating Larry's 1985 grant of rights, and the incontrovertible provisions of the 1993 agreement make clear that such agreement does not replace the 1985 grant. While the 1985 grant is expressly referenced in the 1993 agreement, and is amended thereby, Larry did not grant any affirmative rights in

---

[1] A true and correct copy of Plaintiff's complaint in this action dated June 3, 2022 (the "Complaint") and exhibit A thereto (Docs. 1 and 1-1, respectively) are annexed as collective Exhibit A to the November 7, 2022 Declaration of Julie B. Wlodinguer in Support of Defendants' Motion for Judgment on the Pleadings ("Wlodinguer Decl.").

Lonesome Dove in the 1993 agreement.   Thus, as a matter of law, Defendants' statutory termination rights with respect to the 1985 grant remained intact following the 1993 agreement.

Moreover, Halcyon's claims are expressly contradicted by Halcyon's pre-suit communications and admissions to Defendants, which acknowledge that Larry's 1985 grant was the operative grant to be terminated, that the 1985 grant was merely amended – not superseded – by the 1993 agreement, and that the 1985 grant survived the execution of the 1993 agreement.

Defendants' Rule 12(c) motion for judgment on the pleadings should be granted.

## STATEMENT OF RELEVANTS FACTS[2]

On March 18, 1985, Larry entered into an agreement with Motown Productions, the predecessor in interest to Halcyon, granting Motown Productions certain film and television rights in Lonesome Dove (the "1985 Agreement" or "1985 Grant").   Complaint, ¶13.   Per the 1985 Grant[3], subject to certain reservations of rights, Larry granted "all of the motion picture, television, remake and sequel, merchandising, commercial tie-up and other allied rights of every kind and nature exclusively through the world in perpetuity" in and to Lonesome Dove to Motown Productions.   *See* Doc. 15-1, ¶1(a).

On August 20, 1993, Larry and Saria Company Inc., furnishing the services of Larry and Ms. Diana Lynn Ossana, on the one hand, entered into an agreement with RHI Entertainment, Inc., a successor in interest to Motown Productions and predecessor in interest to Halcyon, on the other hand (the "1993 Agreement")[4].   Complaint, ¶18.   As Halcyon concedes, the 1993 Agreement "primarily related to the acquisition of film and television rights to the literary work entitled

---

[2] For purposes of this motion only, the allegations of the Complaint are taken as true.

[3] Although Halcyon conspicuously failed to attach a copy of the 1985 Grant to the Complaint, a true and correct copy of the 1985 Grant is annexed as Exhibit A to Defendants' Answer dated August 5, 2022 (Doc. 15) (hereinafter, the "Answer").   A true and correct copy of Defendants' Answer, as well as Exhibits A through D thereto (Docs. 15-1, 15-2, 15-3, and 15-4, respectively) are annexed to the Wlodinguer Decl. as collective Exhibit B.   *See* Doc. 15-1.

[4] Halcyon also failed to attach a copy of the 1993 Agreement to its Complaint.   A true and correct copy of the 1993 Agreement is annexed as Exhibit B to Defendants' Answer.   *See* Doc. 15-2.

2

'Streets of Laredo,'" a sequel novel to Lonesome Dove also written by Larry.  Complaint, ¶¶19-20.  While the 1993 Agreement makes particular reference to the 1985 Grant in paragraph 7.5 thereof, the 1993 Agreement does not contain any express language revoking or canceling the 1985 Grant.  *See generally* Doc. 15-2 and ¶7.5.  The 1993 Agreement amends and/or supplements certain of the terms of the 1985 Grant.  *See*, *e.g.,* Doc. 15-2, ¶¶7.5.1-7.5.3 (imposing restrictions on rights previously granted under the 1985 Grant with respect to the right to produce a "series" thereunder).  However, the 1993 Agreement grants no rights with respect to Lonesome Dove.  Rather, the rights granted in the 1993 Agreement pertain solely to "Streets of Laredo."  *See* Doc. 15-2, ¶4 (defining "Work" as the "[o]riginal literary work entitled 'Streets of Laredo'") and ¶¶7.1, 7.2, and 7.3 (granting rights solely with respect to the "Work", i.e., Streets of Laredo).[5]

Larry sadly passed away in March 2021[6].  He was survived by his sole child, James, and his wife, Norma.  Complaint, ¶12.  Norma and James therefore became the statutory heirs to Larry with respect to his post-1978 copyright grants pursuant to 17 U.S.C. §203(a)(2).

In an email dated October 20, 2021, Shelley Reid – Halcyon's Head of Business Affairs and Legal – sent counsel for Defendants a proposal to extend the 1985 grant of rights in Lonesome Dove to Halycon (the "October 2021 Proposal").  Answer, ¶22 and Doc. 15-3.  Although Ms. Reid stated in her email that the 2021 Proposal "sets forth the background between the parties, tracks the ownership of rights, the steps necessary to proceed and the mechanics whereby the parties would enter into a new agreement," the October 2021 Proposal does not make any reference whatsoever to the 1993 Agreement.  *Id*.  Moreover, Halycon's October 2021 Proposal (1) referred

---

[5]  As discussed more fully below, an author has the statutory right to terminate "grants" of rights under 17 U.S.C. §203; the only grant of rights in Lonesome Dove was under the 1985 Agreement.

[6] The Court may take judicial notice of Larry's death.  *See* https://www.nytimes.com/2021/03/26/books/larry-mcmurtry-dead.html.

to the 1985 Agreement as the "Original Grant," (2) contemplated Halycon's acceptance of a notice of termination of the 1985 Grant, and (3) proposed that Defendants warrant and represent to Plaintiff "that except to the extent modified by the New Agreement [to be entered into between the parties], the 1985 Agreement is in full force and effect." *Id.*

Two months later, on or about December 27, 2021, Halcyon's counsel, Pryor Cashman LLP, who also represents Halcyon in this action, emailed counsel for Defendants at Ms. Reid's direction to provide a draft "Acquisition Agreement" (the "December 2021 Draft Agreement"). Answer, ¶22 and Doc. 15-4.  In direct contradiction to the claims asserted by Plaintiff in this action, Halcyon's December 2021 Draft Agreement referred to the 1993 Agreement as amending – not revoking or superseding – certain provisions of the 1985 Agreement.  Halcyon's December 2021 Draft Agreement also described a June 22, 1995 agreement as amending the 1985 Agreement.  *See* Doc. 15-4.

On February 10, 2022, in accordance with their statutory right to recapture the copyrights in Lonesome Dove pursuant to Section 203 of the Copyright Act, James and Norma served a "Notice of Termination of Copyright Grant Pursuant to 17 U.S.C. Section 203" upon Halcyon and non-party Chicken Soup For The Soul Entertainment, Inc (hereinafter, the "Termination Notice"), terminating the 1985 Grant.  *See* Complaint (Doc. 1), ¶27 and Doc. 1-1.

Despite previously acknowledging in 2021 that the 1985 Grant was the operative grant, Halcyon now contends that the Termination Notice is not valid because the 1993 Agreement allegedly "revoked, terminated, and replaced" the 1985 Grant, purportedly extinguishing the termination rights of Larry and his heirs.  Complaint, ¶¶22-23.  A side-by-side comparison of the 1985 Grant and the 1993 Agreement refutes Halycon's baseless contentions.

The central question in this case – whether the 1993 Agreement constituted a revocation of the 1985 Grant – is one of law, not fact, and is fully capable of being determined by the Court solely by reference to the pleadings and the documents attached thereto or incorporated by reference therein.  It is precisely the type of legal question that is ripe for judicial intervention before incurring the time, expense, and effort of discovery.

As the relevant agreements reflect that the 1993 Agreement is not a revocation of or superseding agreement to the 1985 Agreement, Defendants are entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## STANDARD OF REVIEW

Halycon's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(c), which states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  "In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, and statements or documents incorporated by reference in the pleadings." *Kertesz v. Gen. Video Corp.*, 2010 WL 11506390, at *2 (S.D.N.Y. Mar. 31, 2010), *quoting Alvarado v. Kerrigan*, 152 F.Supp 2d 350, 354 (S.D.N.Y. 2001); *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 500 (S.D.N.Y. 2011).  *See also United Specialty Ins. Co. v. CDC Hous., Inc.*, 233 F. Supp. 3d 408, 412 (S.D.N.Y. 2017) (court may consider the pleadings themselves, documents attached to or incorporated by reference in the pleadings, and any matter of which it takes judicial notice).  Documents properly considered need

not convert the motion for judgment on the pleadings into a motion for summary judgment. *Nieman v. Syracuse Univ. Off. of Hum. Res.*, 2013 WL 2445098, at *2 (N.D.N.Y. June 5, 2013).

In deciding a motion for judgment on the pleadings, the court applies the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  *See also Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019), *citing L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) and *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).   Thus, to survive a Rule 12(c) motion, Halycon's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Typically, all reasonable inferences are drawn in favor of the non-moving party and the truth of the allegations in a pleading are presumed to be true.   *Hayden*, 594 F.3d 150, at 160.   However, conclusory allegations and allegations clearly contradicted by documentary evidence incorporated into the pleadings are not entitled to favorable inferences.   *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007); *Microban LLC v. InspireMD, Inc.*, 2018 WL 522335, at *4 (S.D.N.Y. Jan. 22, 2018) (conclusory allegation "belied by the clear terms" of the subject agreement did not support a plausible claim).   *See also CJI Trading LLC v. JPMorgan Chase Bank, N.A.*, No. 20 CIV. 4294 (AKH), 2021 WL 2036678, at *3 (S.D.N.Y. May 21, 2021) (Hellerstein, J.) (internal citations omitted).

The motion will be granted if the movant "has established that no material issue of fact remains to be resolved," *see Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*, 2017 WL 4402567, at *2 (S.D.N.Y. Sept. 30, 2017) (citation omitted), and that "no set of facts can be proven that would entitle the plaintiff to relief."   *Labajo*, 478 F. Supp. 2d 523, at 528.   "Issues of contract interpretation ordinarily present questions of law for the court to decide and are

therefore appropriately resolved in a Rule 12(c) motion." *Vayngurt v. Sw. Credit Sys., L.P.*, No. 16CV2261ARRVMS, 2016 WL 6068132, at *3 (E.D.N.Y. Oct. 14, 2016) (internal quotation omitted) (interpreting unambiguous contract as a matter of law and granting Defendants' 12(c) motion).  *See also ANI Pharms., Inc. v. Cabaret Biotech Ltd.*, No. 19 CIV. 5409 (AKH), 2020 WL 1989400, at *5 (S.D.N.Y. Apr. 26, 2020) (Hellerstein, J.) (interpreting contracts at issue in declaratory judgment action and granting motion for judgment on the pleadings); *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021) (Rule 12(c) judgment on the pleadings is "particularly appropriate" in cases concerning the "legal interpretations of the obligations of the parties because initial interpretation of a contract is a question of law for a court.").

On the basis of the pleadings and incorporated documents herein, Defendants seek an order awarding declaratory judgment in favor of Defendants on Plaintiff's sole cause of action.  A district court should render a declaratory judgment when doing so will either "serve a useful purpose in clarifying and settling the legal relations in issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969).

In this case, Plaintiff has asserted a purely legal question: does the 1993 Agreement terminate, rescind, replace, supersede or revoke the 1985 Grant?  The plain language of the two agreements at issue make clear that it does not.  As there are no material facts in dispute, and because this case requires a legal interpretation of the parties' contracts, Defendants are thus entitled to judgment on the pleadings.

## ARGUMENT

### I.     Defendants Are Entitled To Judgment On Plaintiff's Claims.

Halcyon's sole objection to Defendants' Notice of Termination is that Defendants purportedly did not have the statutory right to terminate the 1985 Grant in 2022 because such grant had already been "revoked, terminated, and replaced" in 1993.  Complaint, ¶¶22.  However, Halcyon's allegations are expressly contradicted by the texts of the two contracts at issue, which make clear that the 1993 Agreement did not revoke, terminate, or replace the 1985 Grant.

### A.     Defendants' Exercise Of Their Termination Rights Was Properly Taken Under Section 203 of the Copyright Act.

Section 203 of the Copyright Act grants authors and their heirs the right to terminate certain copyright grants made after January 1, 1978, resulting in a reversion of the subject copyrights to such authors or their heirs.  *See generally* 17 U.S.C. §203.  Congress' intent in enacting Section 203 was to "safeguard[ ] authors against unremunerative transfers" and redress "the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited," by giving authors a second chance to negotiate more advantageous grants after the true value of their works became known.  H.R. REP. 94-1476, 124, 1976 U.S.C.C.A.N. 5659, 5740.  *See also* Complaint (Doc. 1), ¶24.

Here, it is indisputable that Defendants' exercise of their termination rights with respect to the 1985 Grant falls within the ambit of Section 203.  Halcyon has not claimed any procedural defect with the Termination Notice, nor could it.  The 1985 grant at issue was executed by Larry after January 1, 1978.  Defendants James and Norma, as Larry's surviving son and widow, respectively, are statutory heirs under 17 U.S.C. §203(a)(2).  The Termination Notice lists an effective date of termination of February 15, 2024, i.e., a date within five years after the end of thirty-five years from the date of the subject grant.  17 U.S.C. §203(a)(3).  The Termination Notice

for the 1985 Grant was served on February 10, 2022, i.e., more than two, but less than ten, years prior to the effective date of termination.  17 U.S.C. §203(a)(4)(A).

Therefore, the sole issue in this action is the legal question of whether the 1985 Grant was terminated upon the execution of the 1993 Agreement such that Defendants no longer have any statutory termination rights with respect to the 1985 Grant.  The pleadings themselves conclusively show that, as a matter of law, it was not.

### B.     The 1993 Agreement Neither Revokes, Terminates, Nor Replaces The 1985 Grant.

#### 1.   *Contractual Termination and Revocation Require Clear Manifestation Of Intent.*

The interpretation of the parties' unambiguous agreements is a question of law for the Court.  *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005).  Thus, the Court may, at this pre-discovery stage, review the subject agreements to determine whether Halycon has stated a claim with respect to its assertion that the 1993 Agreement terminated and superseded Larry's 1985 Grant.  New York law[7] provides that "parties to an agreement can mutually agree to terminate it by ***expressly assenting to its rescission*** while simultaneously entering into a new agreement dealing with the same subject matter."  *Penguin Group (USA) Inc. v. Steinbeck* (hereinafter "*Steinbeck*"), 537 F.3d 193, 200 (2d Cir. 2008) (emphasis added), *citing Jones v. Trice*, 202 A.D.2d 394, 395 (2d Dep't 1984).  Only where the parties "have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement" does "the subsequent agreement extinguish[ ] the old one."  *Steinbeck*, at 200, *quoting Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 867 (2d Dep't 1984).

---

[7] The 1985 Grant does not have a choice of law provision, but the 1993 Agreement is governed by New York law.  *See* Answer (Doc. 15-2), ¶22.

The best evidence of the parties' intentions in an unambiguous contract is the language contained within the four corners of the subject agreement. *See DC Comics v. Pac. Pictures Corp.*, 545 F. App'x 678, 681 (9th Cir. 2013) (no extrinsic evidence needed to ascertain whether later agreement superseded an earlier one since text of agreement made clear parties' intentions), *citing W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157 (N.Y. 1990). *See also Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, at 69, *citing Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002).

There is a trilogy of cases from the Second and Ninth Circuits which form the critical jurisprudence on this area of copyright termination law: *Milne ex rel. Coyne v. Stephen Slesinger Inc.*, 430 F.3d 1036 (9th Cir. 2005), *Classic Media Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008), and the Second Circuit *Steinbeck* case.

The first case, *Milne*, is a 2005 copyright termination case relating to A.A. Milne's popular children's series "Winnie the Pooh." 430 F.3d 1036. In 1930, author A.A. Milne granted producer Stephen Slesinger certain copyright interests in the Pooh works in exchange for royalties. *Id*. Milne passed away, and his son, Christopher Robin, became his statutory heir. *Id*., at 1039. In 1983, rather than exercise his vested statutory termination rights under the Copyright Act, Christopher Robin renegotiated the 1930 deal with Slesinger's company and Walt Disney Productions, Slesinger's successor-in-interest, and entered into a new agreement with them in which he expressly revoked the prior grant of rights and then re-granted (on the same page) the rights in the Pooh works back to Slesinger's company and Disney on more favorable economic terms. *Id*., at 1040. The 1983 agreement specifically stated that the new grantors "hereby assign, grant, and set over unto [grantee] all of the rights in and to [the Pooh works] which were transferred to [Slesinger by virtue of the 1930 grant]." *Milne*, 430 F.3d 1036, 1040, n. 4. The 1983 grant also expressly stated that it was being made in exchange for Christopher Robin's non-exercise of his

vested termination right.  *Id.*, at 1040.  When Milne's granddaughter attempted to terminate the 1930 grant in 2002, the Ninth Circuit held that the 1983 agreement had revoked the 1930 grant and therefore that there was no statutory termination right for Ms. Milne under the Copyright Act with respect to the 1930 grant.  *Id.*, at 1042-1043.

*Classic Media*, another Ninth Circuit case, concerned the termination rights of Winifred Knight Mewborn, the daughter of Eric Knight, the author of the beloved story *Lassie Come Home*. 532 F.3d 978.  Defendant Classic Media argued that a 1978 grant from Mewborn superseded a 1976 grant between the same parties, such that Mewborn could not exercise her statutory termination rights under Section 304.  *Id.*  The Court disagreed, holding that the 1976 assignment "was not substituted or revoked by the 1978 Assignment but remained intact."  *Id.*, at 986.  The *Classic Media* Court noted that, unlike in *Milne*, the 1978 contract at issue contained no express language revoking the prior contract, and was merely an explicit affirmation of the 1976 assignment.  *Id.*, at 989.  In so holding, the Court noted that while the 1978 grant referenced the 1976 grant, the 1978 conveyance was made "in addition to" the rights granted in the 1976 assignment, and only "to the extent such rights [were] owned by" Mewborn.  *Id.*  Also persuasive to the Ninth Circuit's analysis was the fact that Mewborn's later grant, unlike the grant in *Milne*, did not expressly state that it was being made "in exchange for non-exercise of [an] immediately investative termination right."  *Id.*, at 989.

A month after *Classic Media* came down, the Second Circuit decided the *Steinbeck* case. 537 F.3d 193.  In that case, the Second Circuit cited *Milne* with approval in holding that a 2004 termination notice served by author John Steinbeck's son and grandson purporting to terminate[8]

---

[8] The *Steinbeck* termination purported to be made pursuant to 17 U.S.C. §304, which governs terminations of pre-1978 copyright grants.

Steinbeck's 1938 grant of copyrights in *Of Mice And Men* and *The Grapes of Wrath*, among other works, was invalid because Steinbeck's widow had entered into a more beneficial agreement in 1994 that terminated and superseded the 1938 grant.  *Steinbeck*, 537 F.3d 193.  In holding that the 1994 agreement superseded the 1938 grant, the Court relied on the following unequivocal language from the 1994 contract: "[t]his agreement, when signed by Author and Publisher, will cancel and supercede the previous agreements, as amended, for the Works # 1 - # 19 [including those works governed by the 1938 Agreement] covered hereunder."  *Id.*, at 200.  While the express language of the superseding agreement was essential to the Court's analysis, the fact that Steinbeck's widow had renegotiated and canceled the 1938 grant "while wielding the threat of termination," as Congress intended, was also central to the *Steinbeck* Court's decision.  *Id.*, at 202.

### 2.  *The 1993 Agreement Does Not Manifest Any Intent To Cancel Or Supersede The 1985 Grant.*

Using the framework crafted by the *Milne*, *Classic Media*, and *Steinbeck* cases, it is clear that the 1993 Agreement at issue in this case does not, as a matter of law, revoke, terminate, or replace the 1985 Grant.

As in *Classic Media*, and unlike the superseding agreements in *Milne* and *Steinbeck*, the 1993 Agreement has no express language canceling or revoking the 1985 Grant.  Nowhere in the four corners of the 1993 Agreement does either party express any intention – let alone a clear one – to cancel or revoke the 1985 Grant.  Nor do the existing provisions manifest any such intention.

To the contrary, the 1993 Agreement makes express reference to certain paragraphs of the 1985 Grant and amends them, leaving provisions of the 1985 Grant agreement intact.  For example, paragraph 7.5 of the 1993 Agreement refers generally to the 1985 Grant and specifically to Larry's grant of the right "to produce a weekly episodic television series (the 'Series') with weekly episodes of up to two hours in length" pursuant thereto.  Doc. 15-2, ¶7.5.  The 1993 Agreement in

12

no way revokes Larry's grant of this right; it merely places certain limitations on the exercise of such right, most importantly to clarify that the 1985 Grant does not provide any right to "use any new characters, locations or events introduced in" Larry's new work "Streets of Laredo", which was the subject of the 1993 Agreement, in the Series.  *See* Doc. 15-2, ¶¶7.5.1-7.5.3.  As another example, while paragraph 7.6 of the 1993 Agreement purports to "freeze" Halycon's "remake, sequel or prequel rights" for "<u>Lonesome Dove</u>", the parties expressly carved out Halycon's right to exercise such rights in connection with works covered by the 1985 Grant, i.e., "the original miniseries based on "Lonesome Dove" and "the Series and any weekly episodic spinoff thereof." Doc. 15-2, ¶7.6.  The 1993 Agreement plainly does not operate as a cancelation of the 1985 Grant. The later agreement's mere reference to the 1985 Grant and enactment of certain amendments to the terms of the 1985 Grant does not make the 1985 Grant ineffective.

Moreover, on its face, the 1993 Agreement does not provide any affirmative grant by Larry of rights in or to "Lonesome Dove" such that it could be deemed a superseding agreement, i.e., "a new agreement dealing with the same subject matter."  *Steinbeck*, at 200.  By Halycon's own admission, the 1993 Agreement primarily concerns a grant of rights in "Streets of Laredo." Complaint, ¶19.  Indeed, all express *grants* of rights in the 1993 Agreement pertain to the "Work," which is defined in that agreement as the "Original literary work entitled 'Streets of Laredo'" – <u>not</u> Lonesome Dove.  Doc. 15-2, ¶¶4, 7.1, 7.2, and 7.3.  While certain characters, themes, and plot elements overlap between the two works given their relationship as works in the same series, each of the agreements at issue grants rights in a distinct work.  The 1993 Agreement thus does not constitute a re-grant of Larry's rights in Lonesome Dove as would be required for a superseding agreement.

Halcyon's conclusory assertions to the contrary in its complaint are unavailing as they are legal assertions "couched" as factual allegations, and are therefore entitled to no weight. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (whether party's action were authorized by the contract at issue "was a legal assertion couched as a factual allegation, and it should not have been deemed admitted"). Furthermore, to accept Halcyon's position would require this Court to make the patently unreasonable inference that the parties intended for the 1993 Agreement to be an agreement in exchange for Larry's non-exercise of his termination right. Not only is the 1993 Agreement silent on this point (as was the contract at issue in *Classic Media*), Larry's termination rights were not vested at the time the purportedly superseding agreement was entered into (as was the case in *Classic Media*). The 1993 Agreement was entered into just 8 years after the 1985 Grant and nearly 2 decades before Larry would have been capable of exercising his termination rights under Section 203. Under this set of undisputed material facts, there are no circumstances under which Larry could have negotiated the 1993 Agreement "while wielding the threat of termination," as Christopher Robin Milne and Mrs. Steinbeck did, in furtherance of Congress' aims. *Steinbeck*, 537 F.3d at 202.

Since the unambiguous contracts themselves conclusively dispose of Halcyon's claims, judgment on the pleadings is appropriate. *See Instead, Inc. v. ReProtect, Inc.*, 349 F. App'x 631, 634 (2d Cir. 2009) (affirming dismissal where unambiguous contract conclusively disposed of claim).

## II.    Plaintiff's Pre-Suit Admissions Contradict Its Litigation Posture.

Although the Court need not look further than the language of the two agreements at issue to determine that the 1985 Grant was neither revoked nor superseded by the 1993 Agreement, the Court may also consider the two damning pre-suit communications by Plaintiff annexed to

Defendants' Answer that undermine Plaintiff's claim. On a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal citation omitted) (district court properly considered 5 emails annexed to defendant's answer by virtue of its counterclaim in deciding defendant's 12(c) motion since the documents were integral to the Complaint and known to the plaintiffs). *See also* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). The two emails at issue are integral to the Complaint here and known to Plaintiff, who was the sender of both communications.

Halcyon's claim that the 1993 Agreement revoked and replaced the 1985 Grant is directly at odds with its pre-litigation communications in which Halycon and its attorneys acknowledged that the 1985 Grant remained in full force and effect and was merely amended by the 1993 Agreement. In the October 2021 Proposal drafted by Halcyon, Halycon itself stated that the 1985 Grant was the appropriate grant to be terminated if the parties were going to renegotiate their deal and requested that, in connection with such renegotiation, Defendants should warrant and represent to Halycon "that except to the extent modified by the New Agreement, the 1985 Agreement is in full force and effect." Doc. 15-3. Consistent with this position, and with the contracts themselves, in the more formal December 2021 Draft Agreement, Halcyon referred to the 1993 Agreement as "amending" – not revoking or superseding – "certain provisions of the 1985 Agreement." Doc. 15-4. In this same document, Halcyon also made reference to a June 22, 1995 agreement between the parties (or their predecessors in interest) and noted that such agreement "amends certain provisions of the 1985 Agreement." *Id*. If the 1993 Agreement was truly a "revocation" or a "superseding agreement" to the 1985 Grant as Halcyon alleges, then an agreement post-dating the

1993 Agreement could not conceivably operate as an amendment to the 1985 Agreement. Thus, by stating that the 1995 agreement amended the 1985 Agreement, Halcyon in effect admitted that the 1985 Grant remained in full force and effect following the 1993 Agreement.

Halcyon's pre-suit communications are in direct contravention to the legal theories asserted in its Complaint and reveal Halcyon's allegation that the 1993 Agreement "revoked, terminated, and replaced…the 1985 Agreement" to be nothing more than a drummed-up, objectively unreasonable "made-for-litigation" theory to thwart Defendants' exercise of their statutory termination rights.

Given the foregoing, there is no material dispute of fact that James and Norma possessed the statutory right to terminate the 1985 Grant and validly exercised such right in serving the Termination Notice upon Halcyon. Halcyon's conclusory assertions to the contrary are refuted by documentary evidence incorporated into the pleadings, and therefore cannot support a plausible claim. *See Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d at 528; *Microban LLC v. InspireMD, Inc.*, 2018 WL 522335, at *4.

Judgment in favor of Defendants pursuant to Rule 12(c) is thus warranted. Defendants' motion should be granted because they have "established that no material issue of fact remains to be resolved." *Vasquez*, 2017 WL 4402567, at *2.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court grant Defendants'

motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, dismiss

this action, grant Defendants their reasonable costs and expenses, including reasonable attorneys'

fees, incurred in defending this action, and grant such other and further relief as the Court deems

just and proper.

Dated:  November 7, 2022                    Respectfully submitted,

**REITLER KAILAS & ROSENBLATT LLP**

 */s/ Julie B. Wlodinguer*
Robert W. Clarida
Julie B. Wlodinguer
885 Third Avenue, 20th Floor
New York, New York 10022
(212) 209-3050
rclarida@reitlerlaw.com
jwlodinguer@reitlerlaw.com

*Attorneys for Defendants*