**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HALCYON TELEVISION, LLC,<br><br>               Plaintiff,<br><br>       -against-<br><br>JAMES L. MCMURTRY and NORMA FAYE<br>KESEY MCMURTRY,<br><br>               Defendants. | Civil Case No. 1:22-cv-04608-AKH |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**PRYOR CASHMAN LLP**
Robert J. deBrauwere
Nicholas Saady
7 Times Square, New York, NY 10036
Tel. (212) 421-4100
rdebrauwere@pryorcashman.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................3

PRELIMINARY STATEMENT ...........................................................................................5

RELEVANT FACTS AND ALLEGATIONS........................................................................7

STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(c) ...............................................8

ARGUMENT..........................................................................................................................9

    I.     Defendants' Motion Must be Dismissed Because Plaintiff
           Pleads a Plausible Declaratory Judgment Claim ................................................9

           a.    The Standard for Plausibly Pleading a Declaratory
                  Judgment Claim ..........................................................................................9

           b.    Plaintiff Pleads More Than Sufficient Factual Allegations
                  to Satisfy the Plausible Pleading Standard................................................10

           c.    Plaintiff's Factual Allegations are Not Clearly Contradicted
                  by Documentary Evidence Annexed to Defendants' Answer ...............11

    II.    Defendants' Motion Must be Dismissed Because the Provisions
           of the 1993 Agreement are Susceptible to Multiple Meanings and
           There is a Material Factual Issue in Dispute in this Action .............................15

           a.    Interpreting an Ambiguous Contract is a Question of Fact ....................15

           b.    The Parties' Disputing Allegations Regarding the Meaning
                  of the 1993 Agreement Evidences the Material, Factual Issue
                  in this Action .............................................................................................17

           c.    Defendants' Argument Regarding The Lack of Express
                  Termination in the 1993 Agreement Should be Rejected.......................20

           d.    Defendants Admit There is a Factual Issue by Relying on
                  Extrinsic Evidence ...................................................................................23

    III.    In the Alternative, if the Court Holds There is No Factual Dispute
           and the 1993 Agreement is Unambiguous, the 1993 Agreement
           Terminates the 1985 Agreement and Regrants Plaintiff Drastically
           Limited Rights ..................................................................................................24

           a.    Analysis of the 1993 Agreement Shows that it Terminates
                  the Rights Granted to Plaintiff Under the 1985 Agreement
                  and Regrants Plaintiff with New Rights in the Work ............................25

           b.    The Leading Cases on Copyright Termination Favor
                  Plaintiff's Case........................................................................................26

c.  McMurtry Exercised his Rights in Accordance with
Congress' Intent ........................................................................29

CONCLUSION ................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>**PAGE(s)**</u>

## <u>CASES</u>

*Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*,
  537 F. Supp. 3d 533 (S.D.N.Y. 2021)...................................................................................... 16

*ANI Pharms., Inc. v. Cabaret Biotech Ltd.*,
  No. 19 Civ. 5409 (AKH), 2020 WL 1989400 (S.D.N.Y. Apr. 26, 2020)............................ 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................ 11

*Baldwin v. EMI Feist Catalog, Inc.*,
  805 F.3d 18 (2d Cir. 2015).........................................................................................*passim*

*Bank of New York v. First Millennium, Inc.*,
  598 F. Supp. 2d 550, 561, 569 (S.D.N.Y. 2009), *aff'd*, 607 F.3d 905 (2d Cir. 2010)…….. 27

*CIT Bank, N.A. v. Neris*,
  385 F. Supp. 3d 241 (S.D.N.Y. 2019)................................................................................... 9

*CJI Trading LLC v. JPMorgan Chase Bank, N.A.*,
  20 Civ. 4294 (AKH), 2021 WL 2036678 (S.D.N.Y. May 21, 2021) ............................ 13, 14

*Cleveland v. Caplaw Enters.*,
  448 F.3d 518 (2d Cir. 2006)................................................................................................. 8

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.*,
  430 F.3d 1036 (9th Cir. 2005) ............................................................................................ 23

*DC Comics v. Pac. Pictures Corp.*,
  No. CV 10-3633 ODW, 2012 WL 4936588 (C.D. Cal. Oct. 17, 2012),
  *aff'd*, 545 F. App'x 678 (9th Cir. 2013)........................................................................*passim*

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*,
  958 F. Supp. 2d 488 (S.D.N.Y. 2013)................................................................................. 11

*Dow Jones & Co. v. Harrods Ltd.*,
  346 F.3d 357 (2d Cir. 2003)................................................................................................ 11

*Graziano v. Pataki*,
  689 F.3d 110 (2d Cir. 2012)................................................................................................. 8

*Grewal v. Cuneo Gilbert & LaDuca LLP*,
  No. 13-CV-6836 (RA), 2018 WL 4682013 (S.D.N.Y. Sept. 28, 2018),
  *aff'd*, 803 F. App'x 457 (2d Cir. 2020) ......................................................................... 15, 20

3

*Haden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010) ................................................................. 8

*In re USAA Data Sec. Litig.*,
    No. 21 CV 5813 (VB), 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) ................................. 9

*Labajo v. Best Buy Stores, L.P.*,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007) ........................................................ 12, 13

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) ................................................................. 9, 17

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) ................................................................. 9, 24

*Microbanc LLC v. InspireMD, Inc.*,
    No. 16 CV 3860-LTS, 2018 WL 522335 (S.D.N.Y. Jan. 22, 2018) ............................... 13, 14

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ................................................................. 14

*Penguin Grp. (USA) Inc. v. Steinbeck*,
    537 F.3d 193 (2d Cir. 2008) ................................................................. 21, 22

*Saint-Amour v. Richmond Org., Inc.*,
    388 F. Supp. 3d 277 (S.D.N.Y. 2019) ........................................................ 9, 10

*Sarikaputar v. Veratip Corp.*,
    371 F. Supp. 3d 101 (S.D.N.Y. 2019) ........................................................ 9

*Savides v. United Healthcare Servs., Inc.*,
    No. 18 Civ. 4621 (LGS), 2019 WL 1173008 (S.D.N.Y. Mar. 13, 2019) ............................ 14

*Sheraton Operating Corp. v. Castillo Grand, LLC*,
    34 Misc. 3d 1207(A), 2011 WL 6973239 at *63 (Sup. Ct. 2011)………….................... 27

*Vayngurt v. Sw. Credit Sys., L.P.*,
    No. 16-CV-2261 (ARR)(VMS), 2016 WL 6068132 (E.D.N.Y. Oct. 14, 2016) ................. 15

## Statutes

Copyright Act, Section 203 ................................................................. *passim*

Copyright Act, Section 304 ................................................................. *passim*

## Other Authorities

Federal Rules of Civil Procedure Rule 12

COPYRIGHTS, 17 U.S. Code §§ 101-1511 (2020) ......................................... 30, 31

Plaintiff Halcyon Television, LLC ("Halcyon" or "Plaintiff"), by its attorneys Pryor Cashman LLP, respectfully submits this Memorandum of Law in Opposition to the Motion of Defendants James L. McMurtry ("James") and Norma Faye Kesey McMurtry ("Norma") (together, "Defendants") for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Defendants' Motion").

## PRELIMINARY STATEMENT

Defendants do not meet the high standard of establishing that Plaintiff failed to plausibly plead its declaratory judgment claim. Indeed, Plaintiff sufficiently alleges all the necessary factual allegations to support its declaratory judgment claim, which warrants this Court dismissing Defendants' Motion, for reasons further explained below.

Defendants focus on the meaning of the terms of the 1993 Agreement[1] and proffer *their own interpretation* of those terms, to argue that the 1993 Agreement does not terminate the rights in the Work granted to Plaintiff under the 1985 Agreement and supersede such agreement. In focusing on the meaning of the terms of the 1993 Agreement, and the parties' intent with respect to those terms, Defendants effectively admit that there is a material factual issue in dispute in this case: whether the *parties intended* for the 1993 Agreement to terminate the rights originally granted to Plaintiff under the 1985 Agreement, and to regrant new rights in the Work to Plaintiff?

Defendants go even further to shine the spotlight on this disputed material factual issue by asking the Court to consider extrinsic evidence from 2021 to determine the meaning of the 1993 Agreement — acknowledging that extrinsic evidence is required to interpret the terms of the 1993 Agreement, and that this case cannot be resolved on a Rule 12(c) motion.

So much is confirmed by consideration of the terms of the 1993 Agreement, which are

---

[1] This Memorandum of Law adopts the same definitions contained in the Complaint filed by Plaintiff in this Action on June 3, 2022 (ECF No. 1).

susceptible to more than one meaning.  The 1993 Agreement, across no less than **twenty-five, highly complex provisions**, terminates all of the rights provided to Plaintiff in a **single provision** of the 1985 Agreement; and then regrants Plaintiff significantly limited rights in the Work. Adding to the ambiguity caused by the nature of this termination and regrant across so many provisions and with such complexity, the 1993 Agreement describes rights in the Work using different terms and definitions to those used in the 1985 Agreement.

The material factual issue in dispute between the parties regarding the meaning and effect of the 1993 Agreement, as well as the fact that Plaintiff has viably pled its declaratory judgment claim, dooms Defendants' Motion.

In the alternative, if the Court holds that there is no material factual issue in dispute in this Action, the Court should determine that the 1993 Agreement effectively terminated and regranted (in a significantly limited manner) every single right granted to Plaintiff under the 1985 Agreement.  The 1993 Agreement also extracted far better economic terms for the Author.

Defendants seek to counter that reality by incredulously asserting that the 1993 Agreement deals with a completely "different work" than the 1985 Agreement.  Yet, as above, the 1993 Agreement specifically refers to the 1985 Agreement and Lonesome Dove no less than twenty-five times.  Section 12.2.1 of the 1993 Agreement also expressly recognizes that portions of Streets of Laredo were "taken from" Lonesome Dove.  Defendants later acknowledge that Streets of Laredo and Lonesome Dove are "works in the same series" and that "certain characters, themes, and plot elements overlap between the two works."  In reality, the 1993 Agreement operated as a safeguard to McMurtry's exploitation of his rights in Streets of Laredo by terminating the unfettered "sequel" rights provided to Plaintiff in the 1985 Agreement with respect to Lonesome Dove, and regranting Plaintiff more limited sequel rights so as to not

interfere with McMurtry's exploitation of Streets of Laredo.

Therefore, in the alternative, if the Court considers the 1985 and 1993 Agreements to be unambiguous, the 1993 Agreement restarted the clock with respect to Defendants' rights under Section 203 of the Copyright Act and Defendants' termination notice is invalid.

## RELEVANT FACTS AND ALLEGATIONS

This case concerns the validity of the Termination Notice sent by Defendants to Plaintiff with respect to the Work. ECF No. 1, Ex. A. Critical to the validity of that Termination Notice are two agreements: the 1985 Agreement and the 1993 Agreement. ECF No. 1, at ¶¶ 13–23. Simply, Plaintiff argues that the 1993 Agreement terminated and regranted the rights provided to Plaintiff under the 1985 Agreement and, therefore, the termination notice is invalid (ECF No. 1, at ¶¶ 23–26); while Defendants argue that the 1985 Agreement remains the operative grant and that the termination notice is valid. ECF No. 20, at p. 12.

The 1985 Agreement was entered into by Author (of whom Defendants are his heirs) and Motown (predecessor in interest to Plaintiff). ECF No. 1, at ¶ 13. The 1985 Agreement granted, in Section 1(a), "all of the motion picture, television, remake and sequel, merchandising, commercial tie-up and other allied rights of every kind and nature exclusively and throughout the world in perpetuity" in the Work. ECF No. 1, at ¶ 15.

The 1993 Agreement was entered into by RHI (successor in interest to Motown and predecessor in interest to Plaintiff) on one hand, and Larry McMurtry and Ms. Diana Ossana on the other. ECF No. 1, at ¶ 18. The 1993 Agreement primarily related to the acquisition of film and television rights to the work titled "Streets of Laredo" — the chronological sequel to "Lonesome Dove" and part of the same series of four books written by the Author that chronicle unique characters and events of the Texas Rangers spanning from the 1840's through the 1890's. ECF No. 1, ¶¶ 19–20. Many of the same characters appear in Lonesome Dove and Streets of

7

Laredo, including Captain Woodrow F. Call, Pea Eye Parker, and Blue Duck.

Importantly, however, the 1993 Agreement clearly and expressly dealt with the Work — specifically referring to the 1985 Agreement and the rights granted therein regarding the Work. ECF No. 1, ¶ 21.  The 1993 Agreement, *inter alia*: (i) revoked, terminated and replaced (with a more limited set of rights) the broad grant of rights in the Work under the 1985 Agreement; and (ii) extracted other, more beneficial terms for the Author regarding the Work, when compared to the 1985 Agreement.  ECF No. 1, ¶ 22.

On February 10, 2022, Defendants sent the Termination Notice to Halcyon and Chicken Soup for the Soul Entertainment, Inc ("Chicken Soup"), purporting to terminate the rights granted to Plaintiff under the 1985 Agreement, despite not mentioning the 1993 Agreement.  ECF No. 1, ¶¶ 27–30.  Plaintiff filed its Complaint on June 3, 2022 (ECF No. 1), seeking a declaration that the Termination Notice is invalid and of no legal force or effect.  Defendants filed an Answer on August 5, 2022 (ECF No. 15) seeking dismissal of this Action.  Defendants then filed a Motion for Judgment on the Pleadings (ECF No. 19) and their supporting Memorandum of Law (ECF No. 20) and Declaration of Julie B. Wlodinguer (ECF No. 21), to which Plaintiff now responds.

## STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(c)

Rule 12(c) motions are reviewed under "the same standard as that applicable to a motion under Rule 12(b)(6)."  *Haden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010).  To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The Court must accept all factual allegations in the Complaint as true and draw all inferences in Plaintiff's favor.  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted).  The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief "does not impose a probability

requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claims alleged. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (citations omitted).

Therefore, "[t]he granting of a motion for judgment on the pleadings is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense." *CIT Bank, N.A. v. Neris*, 385 F. Supp. 3d 241, 244 (S.D.N.Y. 2019) (citation omitted); *Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 105 (S.D.N.Y. 2019).

Further, judgment on the pleadings is *not* appropriate if there are issues of fact to be resolved — even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (citations omitted).

## **ARGUMENT**

### I. **Defendants' Motion Must be Dismissed Because Plaintiff Pleads a Plausible Declaratory Judgment Claim**

#### a)     **The Standard for Plausibly Pleading a Declaratory Judgment Claim**

To survive a Rule 12(c) motion, Plaintiff must plausibly plead: (1) facts showing that there is a substantial controversy, (2) between parties having adverse legal interests, (3) which has sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 287 (S.D.N.Y. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also In re USAA Data Sec. Litig.*, No. 21 CV 5813 (VB), 2022 WL 3348527, at *11–12 (S.D.N.Y. Aug. 12, 2022) (holding that plaintiffs plausibly pleaded their declaratory judgement claim by alleging a dispute that was "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and

substantial," and "admit[ted] of specific relief through a decree of a conclusive character." (quoting *MedImmune*, 549 U.S., at 127)).

### b)    Plaintiff Pleads More Than Sufficient Factual Allegations to Satisfy the Plausible Pleading Standard

Plaintiff clearly meets the applicable standard.   Plaintiff pleads that a "definite and concrete dispute has arisen between Plaintiff and Defendants regarding the validity and legality of the Termination Notice, and their rights regarding the Work."  Complaint (ECF No. 1) ¶ 38.

Plaintiff further pleads that the Termination Notice is invalid because the 1993 Agreement "revoked, terminated, and replaced the broad grant of rights in the Work under the 1985 Agreement."  Compl. ¶ 22.  Particularly, Plaintiff pleads that "the 1993 Agreement clearly and expressly" dealt with the 1985 Agreement, by "specifically referring" to the 1985 Agreement on numerous occasions (in fact, no less than 25 times) and dealing with all of "the rights granted therein regarding the Work."  Compl. ¶ 21.  With even more particularity, Plaintiff pleads that the 1993 Agreement "terminated" the rights originally granted to Plaintiff under the 1985 Agreement, regranted severely restricted rights to Plaintiff, and extracted "more beneficial economic terms for the Author" — which "extinguished the termination rights of the Author and his heirs."  Compl. ¶¶ 22–23, 25–26, 34–35.

Plaintiff then sufficiently pleads the existence of a "substantial controversy … between parties having adverse legal interests" (*Saint-Amour*, 388 F. Supp. 3d at 287) by alleging that Defendants purported to terminate the grant of rights pursuant to the Termination Notice and that "Defendants assert that the Termination Notice is valid."  Compl. ¶ 36.  The existence of this substantial controversy is confirmed by Defendants' Answer.

In further satisfaction of the applicable pleading standard, Plaintiff pleads that "[a]s a result of this dispute, there is an actual, substantial and justiciable controversy between Plaintiff

and Defendants" — arising from the factual allegations above.  Compl. 39.  Plaintiff again articulates that actual, substantial and justiciable controversy: "Defendants assert that the Termination Notice is valid" while "Plaintiff asserts that Termination Notice is invalid and of no legal force or effect."  Compl. ¶¶ 36–37.

Finally, Plaintiff pleads that "[t]he validity and legality of the Termination Notice, and the rights of Plaintiff and Defendants regarding the work, cannot be settled without a declaratory judgment from this Court" and that a "declaratory judgment will directly and immediately resolve the controversy between Plaintiff and Defendants."  Compl. ¶¶ 40–41.  Specifically, a declaratory judgment from this Court would finally and immediately resolve the validity of the Termination Notice.  In other words, the declaratory judgment sought would, as is required, "serve a useful purpose in clarifying or settling the legal issues" as to the validity of the Termination Notice, and provide the parties with "relief from uncertainty" regarding the meaning and effect of the 1993 Agreement.  *Dow Jones & Co. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir. 2003).

It should also be noted that declaratory judgment is appropriate here as Plaintiff has not invoked any right to a coercive remedy, other than seeking this declaratory judgment.  *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc*., 958 F. Supp. 2d 488, 507 (S.D.N.Y. 2013) (holding that a declaratory judgment claim should be dismissed because plaintiff already sought a right to a coercive remedy in the form of an injunction).

As such, accepting as true all of these factual allegations and drawing all inferences in Plaintiff's favor — as is required under the applicable Rule 12(c) standard — Plaintiff plausibly pleads entitlement to the declaratory relief sought.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### c) Plaintiff's Factual Allegations are Not Clearly Contradicted by Documentary Evidence Annexed to Defendants' Answer

Defendants resort to two pieces of correspondence, annexed to their Answer, to argue

11

that Plaintiff should not be entitled to any favorable inference with respect to its allegations in the Complaint.  This Court should not consider those two pieces of correspondence — respectively authored by a business executive of Plaintiff (Ms. Shelley Reid, Head of Business Affairs, Halcyon Studios, LLC) and external corporate counsel to Plaintiff (Mr. Ralph De Palma III, Esq.) — on Defendants' Motion because doing so would contravene Rule 12(d) of the Federal Rules of Civil Procedure which provides that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Plaintiff, with the benefit of discovery (which is continuing), is likely to present nearly 40 years of correspondence between the parties which provides context to, and bears on the meaning and effect of, the 1985 Agreement and the 1993 Agreement.  Plaintiff has not yet been given a "reasonable opportunity" to do so.  As such, neither piece of correspondence should be considered by this Court without Plaintiff being first provided with that opportunity.

In any case, these two pieces of correspondence do not "clearly contradict" Plaintiff's well-plead allegations for declaratory relief and therefore, the Court should draw *all* reasonable inferences in favor of Plaintiff.  Particularly, this is because the views stated in both are contradicted by later, non-privileged correspondence from *the same individuals* to Defendants (in which they assert that the 1993 Agreement is the operative grant and that the Termination Notice is invalid).  These are two cherry-picked pieces of correspondence that Defendants could potentially only rely on as extrinsic evidence under New York law (see below) — albeit from nearly 30 years after the date of the 1993 Agreement (so they would likely have little, if any relevance, and if relevant, have extremely limited probative value) — to assist the Court in determining the meaning and effect of the 1993 Agreement.

The cases cited by Defendants, *Labajo v. Best Buy Stores, L.P.,* 478 F. Supp. 2d 523 (S.D.N.Y. 2007) and its progeny, to support Defendants' argument on this point actually harm

Defendants' case.  According to *Labajo*, this Court should accept Plaintiff's allegations because relying on the ambiguous and subjective views of the authors of the extrinsic correspondence would require the Court "to go outside the pleadings (and documents annexed thereto)" to ascertain the authors' understanding and intention, and require "some testimony or other evidence to show" their understanding and intention regarding the effect of the 1993 Agreement. *Id.* at 530.

Even worse for Defendants, the Court in *Labajo* denied a motion for judgment on the pleadings because it was "not apparent from the pleadings and defendants' documents that Labajo will be **unable to prove any set of facts** that would entitle her to relief."  *Id.* (emphasis added).  The same is true in this case, as the correspondence cited by Defendants is contradicted by correspondence from *the same two individuals* and has been presented to this Court without the aid of *any* discovery.  As the Court in *Labajo* held, with the benefit of discovery, it is extremely likely that Plaintiff — with documents from closer to 1993 and directly from the parties to the 1993 Agreement — will prove that the 1993 Agreement terminated and regranted the rights granted to Plaintiff under the 1985 Agreement and therefore a "set of facts" entitling Plaintiff to the relief it seeks.  *Id.*

Similarly, *Microbanc LLC v. InspireMD, Inc.*, No. 16 CV 3860-LTS, 2018 WL 522335 (S.D.N.Y. 2018) and *CJI Trading LLC v. JPMorgan Chase Bank, N.A*., 2021 WL 2036678 (S.D.N.Y. 2021) do nothing to assist Defendants' case.  In *Microbanc,* the Court refused to accept a "conclusory" allegation that an agreement "memorialize[d] a prior agreement … and was intended to apply retroactively" because it did not have *any* "factual support" in the plaintiff's Amended Complaint and was "belied by the clear terms" of the relevant agreement.  *Microbanc,* 2018 WL 522335 at *4.  In *CJI Trading*, the relevant document was a legal agreement between

the parties, which unambiguously contradicted the allegations in the complaint.

The present case is distinguishable from both *Microbanc* and *CJI Trading*. Here, the correspondence alleged to contradict Plaintiff's allegations does not purport to provide definitive, 'with prejudice' legal interpretations of the 1985 and 1993 Agreements, and is contradicted by subsequent non-privileged correspondence from the same individuals. This additional evidence is not yet before the Court, but its existence emphasizes that it would be inappropriate for this Court to reject the factual allegations in the Complaint. Further, unlike in *Microbanc,* none of the allegations supporting Plaintiff's declaratory judgment claim are conclusory or unsupported by factual allegations, for reasons stated above.

Finally, exhibits to pleadings, such as the two pieces of correspondence at issue, should not be considered on Defendants' Motion because there is a dispute regarding their "accuracy" in representing the true views of their authors. *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 231 (2d Cir. 2016) (holding that "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.") (citations omitted); *Savides v. United Healthcare Servs., Inc*., No. 18 CIV. 4621 (LGS), 2019 WL 1173008, at *2 (S.D.N.Y. Mar. 13, 2019) (holding that "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible.") (citations omitted).

There are also material issues of fact regarding the relevance of the documents, as they: (i) were written nearly 30 years after the time when these agreements were negotiated and executed; and (ii) were written by individuals not at all involved in such negotiation or execution. *Id.* at *2 (holding that "[i]t must also be clear that there exist[s] no material disputed issues of fact regarding the relevance of the document.") (citing *Nicosia,* 834 F.3d at 231).

**II.    Defendants' Motion Must be Dismissed Because the Provisions of the 1993 Agreement are Susceptible to Multiple Meanings and There is a Material Factual Issue in Dispute in this Action**

In addition to Plaintiff plausibly pleading its declaratory judgment claim, this Court should dismiss Defendants' motion because — as Defendant effectively admits — there is a material factual issue in dispute that lies at the heart of this Action.  That issue arises from the ambiguity of the terms of the 1985 and 1993 Agreements.

Simply, the factual issue is: did the parties intend for the 1993 Agreement to terminate the rights originally granted to Plaintiff under the 1985 Agreement, and regrant new rights in the Work to Plaintiff?

**a)    Interpreting an Ambiguous Contract is a Question of Fact**

Under New York law, interpretation of an ambiguous contract is a question of fact. *Grewal v. Cuneo Gilbert & LaDuca LLP*, No. 13-CV-6836 (RA), 2018 WL 4682013, at *5 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 803 F. App'x 457 (2d Cir. 2020) (citations omitted).  Ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who looks at the contract as a whole and has examined the context of the entire agreement.  *Id.* (citations omitted).  As above, where there is a factual issue, a motion for judgment on the pleadings must be denied.

The cases to which Defendants cite to suggest that this case should be resolved on the pleadings are all unavailing and distinguishable.  In reality, *Vayngurt v. Sw. Credit Sys., L.P.*, No. 16-CV-2261 (ARR)(VMS), 2016 WL 6068132 (E.D.N.Y. Oct. 14, 2016) held that because the disputed contractual provision was "capable of more than one meaning ... it [was] ambiguous as a matter of law."  *Id.* at *3.  However, because "there [wa]s no relevant evidence extrinsic to the [contract] bearing on the intention of the parties at the time of its execution" it was appropriate for the Court to determine the meaning of the contract as a matter of law.  *Id.* at *4.  Unlike in

*Vayngurt* where there was "no relevant extrinsic evidence," in the present case it is likely that discovery will reveal evidence regarding the parties' intentions with respect to the 1985 and 1993 Agreements (derived from the last nearly 40 years) — in fact, Defendants admit as much by referring to extrinsic evidence in support of their motion.

*ANI Pharms., Inc. v. Cabaret Biotech Ltd.,* No. 19 Civ. 5409 (AKH), 2020 WL 1989400 (S.D.N.Y. Apr. 26, 2020) is also distinguishable because it involved the application of a dispositive "straightforward principle" under California contract law that "the terms of a contract cannot be altered except with the consent of all contracting parties." *Id.* at *3. That is vastly different from the present case, which concerns agreements governed by New York law and does not raise a simple legal issue like the existence of consent to the alteration to a contract. Rather, this case concerns the meaning and effect of various complex and unclear contractual clauses which give rise to a factual issue not amenable to resolution on a Rule 12(c) motion.

Finally, *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C*., 537 F. Supp. 3d 533 (S.D.N.Y. 2021) is distinguishable because it concerned an insurance contract which, under New York law, is subject to distinct principles of contractual interpretation that favor insureds. *Id.* at 552. Further, the principle for which *Allstate* is cited was incorrectly stated by Defendants, as the Court in *Allstate* held that judgment on the pleadings "**can be** … particularly appropriate in **breach of contract cases** involving legal interpretations of the obligations of the parties," but the Court clarified that this was only appropriate where the relevant contract's terms were all unambiguous (per New York law). *Id*. at 540 n.1, 545–546 (emphases added).

This renders Defendants' assertion that *Allstate* holds that "judgment on the pleadings **is** 'particularly appropriate' in cases concerning the legal interpretations of the obligations of the parties because **initial interpretation of a contract is a question of law**" incorrect. *See Defendants' Memorandum of Law in Support of Defendants' Motion for Judgment on the*

*Pleadings* (ECF No. 20) ("MOL") p. 7 (emphases added).

> **b)      The Parties' Disputing Allegations Regarding the Meaning of the 1993 Agreement Evidences the Material, Factual Issue in this Action**

Plaintiff pleads that the 1993 Agreement "revoked, terminated, and replaced the broad grant of rights in the Work under the 1985 Agreement; and extracted other, more beneficial terms for the Author regarding the Work, when compared to the 1985 Agreement," which "extinguished the termination rights of the Author and his heirs." Compl. ¶¶ 22–23, 25–26.

Those factual allegations are forcefully and repeatedly *disputed* by Defendants who "deny the allegations contained in paragraph 22 of the Complaint, and further state that the allegations contained in paragraph 22 of the Complaint are contradicted by the terms of the 1993 Agreement." Answer (ECF No. 15) ¶ 22. Defendants also deny the allegations contained in paragraphs 23, 25, and 26 of the Complaint, in which Plaintiff pleads a totally different meaning to the terms of the 1993 Agreement to that advanced by Defendants. Answer ¶¶ 23, 25–26.

These "allegations of fact … controverted in the pleadings" establish a clear, material factual issue in dispute between the parties regarding the effect of the 1993 Agreement. *Lively*, 6 F.4th at 302 (holding that judgment on the pleadings only has utility when "all material allegations of fact are admitted or not controverted in the pleadings."). This alone compels denial of Defendants' motion.

Disregarding the significant factual dispute crystallized by their Answer, Defendants try to assert that the provisions of the 1993 Agreement are "unambiguous" and "incontrovertible." MOL pp. 1, 7, 14. This position is contrary to the pleadings, including *their own Answer*. More importantly, Defendants fail to advance *any* reason, beyond their conclusory assertions, as to how the terms of the 1993 Agreement are unambiguous. They expect the Court to blindly accept their interpretation of the terms of the 1993 Agreement, without any analysis of the agreements

at issue.  Unfortunately, as Plaintiff has pleaded, Defendants' interpretation is just that, and it is an interpretation fiercely denied by Plaintiff.

While the above dispute crystallized in the pleadings is sufficient for this Court to hold that a clear factual dispute exists, if the Court looks at the terms of the relevant agreements, their ambiguity (and complexity) is clear.

### The Terms of the 1985 Agreement

The 1985 Agreement provided an extremely broad grant to Plaintiff of "all of the motion picture, television, remake and sequel, merchandising, commercial tie-up and other allied rights of every kind and nature exclusively throughout the world in perpetuity" in and to the Work. 1985 Agreement, § 1(a).

### The Terms of the 1993 Agreement

The 1993 Agreement expressly refers to the rights granted to Plaintiff under the 1985 Agreement.  *See* § 7.5.  The 1993 Agreement provides — in Section 7 "Grant of Rights"[2] —  that "[r]emake motion picture rights in … 'Lonesome Dove' and Lonesome Dove … are **frozen in perpetuity and shall not be exercised** without the mutual written approval" of Author and Plaintiff — except in connection with the weekly episodic television series based on 'Lonesome Dove' and any spinoff episodic television series.  *See* § 7.4 (emphasis added).  By providing that remake motion picture rights are *both* frozen *and* "cannot be exercised," the 1993 Agreement effectively terminates these rights and regrants them in a more limited manner — solely with respect to the "Series" and "any spinoff weekly episodic series," and subject to other restrictions and economic terms contained in the 1993 Agreement.

The 1993 Agreement further provides that "[n]otwithstanding **anything to the contrary**

---

[2] This totally contradicts Defendants' assertion that "Larry did not grant any affirmative rights in Lonesome Dove in the 1993 [A]greement" (MOL pp. 1-2), as there were clearly express rights granted provided to Plaintiff under the 1993 Agreement, as the analysis in this Section shows.

in the **[1985] Agreement**, [Plaintiff] hereby agrees that [Plaintiff] **cannot exercise any remake, sequel or prequel rights** (other than the original miniseries based on 'Lonesome Dove')" in and to the Work. *See* § 7.6 (emphasis added).

Additionally, the 1993 Agreement prohibited Plaintiff from using "any new characters, locations, or events introduced" in Streets of Laredo in any weekly television series or spinoff weekly episodic television series with respect to the Work. *See* § 7.5.1. It also prohibited Plaintiff from creating any "animated" weekly television series or spinoff weekly episodic television series with respect to the Work. *See* § 7.5.2. Further, it restricted Plaintiff's right to use the McMurtry name with respect to any weekly television series or spinoff weekly episodic television series, and the advertising, promotion and publicity of the same. *See* § 7.5.3.

"Notwithstanding **anything to the contrary in the [1985] Agreement**," the 1993 Agreement also provided that "the rights to publish the teleplays for "Lonesome Dove" [i.e., the Work] shall be **frozen in perpetuity and shall not be exercised** without the mutual written approval" of Author and Plaintiff. *See* § 8.2 (emphasis added). The 1993 Agreement additionally prohibited any novelization of the teleplays for the Work (Lonesome Dove), "notwithstanding anything to the contrary set forth in the [1985] Agreement." *See* § 8.2. The 1993 Agreement also granted Plaintiff the right to "conclude" a "merchandising deal for merchandising rights" to the Work (Lonesome Dove). *See* § 7.8.

Finally, the 1993 Agreement altered the payments that were to be provided to Plaintiff with respect to exploitation of regranted rights in the Work, and provided Author with more advantageous economic terms associated with exploitation of regranted rights in the Work, "in lieu of any amounts payable" to Plaintiff under the 1985 Agreement. *See, e.g.,* 1993 Agreement §§ 9.1.3, 10.6. For example, the 1993 Agreement *doubles* the royalty payable to Author for a television series based on the Work, from $1,500 per sixty minutes in Section 8 of the 1985

Agreement to $3,000 per sixty minutes in Section 10.6 of the 1993 Agreement.

Considering the above, Defendants' assertion that the 1993 Agreement leaves "provisions of the 1985 Grant agreement intact" (MOL p. 12) is baseless — the 1993 Agreement comprehensively deals with all of the rights granted to Plaintiff under the 1985 Agreement. Further, to describe the 1993 Agreement as a mere amendment grossly mischaracterizes the effect of the 1993 Agreement in totally abrogating the rights granted under the 1985 Agreement, and regranting them in a far more limited manner to Plaintiff.

### The Terms of the 1993 Agreement are Susceptible to More Than One Meaning

The meaning and effect of the 1993 Agreement remains susceptible to having "more than one meaning when viewed objectively" as a whole and after considering "the context of the entire agreement." *Grewal,* 2018 WL 4682013, at *5.  The 1993 Agreement's extensive termination of rights granted under the 1985 Agreement is accomplished across no less than twenty-five, highly complex provisions.  That contrasts the almost unlimited grant of rights in a single provision of 1985 Agreement.

The 1993 Agreement also regrants Plaintiff rights to the Work in a complicated manner, subject to various restrictions and limitations that are strewn across many discrete provisions of the 1993 Agreement.   The 1993 Agreement further regrants rights "in lieu of" and "notwithstanding" provisions in the 1985 Agreement.  This complexity is reinforced by the fact that the 1993 Agreement does not refer to the rights granted under the 1985 Agreement using the same terminology or definitions as were used in the 1985 Agreement.

As such, the meaning and effect of the 1993 Agreement is capable of more than one potential meaning, and therefore, this Court should dismiss Defendants' Motion and allow the parties to submit further evidence with respect to the intent of the parties to the 1985 Agreement.

c)  **Defendants' Argument Regarding The Lack of Express Termination in the 1993 Agreement Should be Rejected**

Defendants attempt to erroneously resort to the lack of any express termination of the 1985 Agreement in the 1993 Agreement to support their Motion.  MOL p. 3.  Defendants cite *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d Cir. 2008) to argue that the lack of any express language in the 1993 Agreement terminating the 1985 Agreement means that the Court cannot hold that the 1993 Agreement terminated and regranted the rights contained in the 1985 Agreement.  However, that argument is rendered baseless by *Baldwin v. EMI Feist Catalog, Inc*., 805 F.3d 18 (2d Cir. 2015).

Defendants <u>do not even cite</u> *Baldwin,* despite purporting to cite the "critical jurisprudence on this area of copyright termination law."  MOL p. 10.  In *Baldwin*, the plaintiffs (heirs of the author of the song "Santa Claus is Comin' to Town") and defendant (contractual grantee of rights in that song) litigated, among other issues, which of a 1951 Agreement and a 1981 Agreement contained the operative copyright grant for the purposes of termination.[3]  The 1981 Agreement provided the plaintiffs with more favorable terms in exchange for a more comprehensive grant of rights to the defendant.  As in the present case, in *Baldwin,* the 1981 Agreement did not explicitly state that it superseded the 1951 agreement.

Holding that the 1981 Agreement terminated and regranted the rights originally granted under the 1951 agreement, the *Baldwin* Court held that the "question is simply whether the parties intended for the new contract to substitute for the old one, and that intention, if otherwise clear, **need not be articulated explicitly in the new agreement**."  *Id*. at 27 (emphasis added).  Further, the Court held that renegotiations of copyright grants in later agreements could impliedly supersede earlier grants, in other words, "an **intention to enter into a substitute contract may**

---

[3] It is noted that *Baldwin* concerned Section 304, not Section 203, of the Copyright Act — although it is equally applicable in this case.

**be express or implied**." *Id*. at 28–29 (citations omitted and emphasis added).  As such, *Baldwin* directly refutes Defendants' argument and, as stated below, supports Plaintiff's case that the effect of the 1993 Agreement was to terminate the 1985 Agreement and regrant Plaintiff  far more limited rights in the Work.

So too does a case decided in the 9th Circuit two years earlier, *DC Comics v. Pac. Pictures Corp*., No. CV 10-3633 ODW (RZx), 2012 WL 4936588 (C.D. Cal. Oct. 17, 2012), *aff'd*, 545 F. App'x 678 (9th Cir. 2013), which applied New York contract law to a dispute regarding the validity of a termination notice sent by defendants (successor-in-interest to the creators of Superman) to plaintiff (DC Comics, the recipient of the copyright grant in Superman).  The facts are, in relevant part, that DC Comics was assigned the "exclusive right to the use of the [Superman] characters and story" in 1938.  *Id.* at *1.  Then in a 1975 agreement, DC Comics agreed to pay various additional payments to the creators' heirs, include insurance coverage, and provide credit on new Superman works.  In a further, 1992 agreement, DC Comics agreed to pay defendants additional lifetime annual compensation and to settle the debts of one of the creators' heirs, and in return, the heirs regranted DC Comics the rights in the creators' characters and vowed never to assert a claim to such rights ("1992 Agreement").  *Id*. at *2.

Although the 1992 Agreement did not explicitly terminate the earlier agreements, it stated that it "fully settle[d] all claims to any payments or other rights or remedies which [DC Comics] may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights … in any and all work created in whole or in part by [the creators]."  *Id*. at *4.  Defendants served DC Comics with a termination notice under Section 304.  DC Comics commenced proceedings seeking a declaration (in its first claim) that the termination notice was invalid and that the 1992 Agreement was the governing grant.

Applying *Steinbeck* and New York contract law, the Court held that "[t]he pertinent

inquiry is thus whether the subsequent agreement, … in whatever form it may be, is[, as] a matter of intention, **expressed or implied**, a superseder of, or substitution of, the old agreement."  *DC Comics,* 2012 WL 4936588 at *4 (citation omitted; emphasis added).  Again, *DC Comics* defeats Defendants' argument, and as stated below, supports Plaintiff's case that the effect of the 1993 Agreement was to terminate the 1985 Agreement and regrant Plaintiff  far more limited rights in the Work.

It is also noted that in *Milne ex rel. Coyne v. Stephen Slesinger, Inc.,* 430 F.3d 1036, 1046 (9th Cir. 2005), the 9th Circuit held, quoting legislative history, that "nothing in this section [203] or legislation is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment."

Considering the above, Defendants' reliance on the lack of express termination clause in the 1993 Agreement does not alone render the 1993 Agreement unambiguous, and does not contradict the parties' intent to revoke and regrant the rights in the 1985 Agreement.  There remains a material, factual issue, which defeats Defendants' Motion.[4]

### d) Defendants Admit There is a Factual Issue by Relying on Extrinsic Evidence

Tellingly, Defendants ask the Court to consider two pieces of correspondence between the parties — clearly extrinsic evidence — to support their proffered interpretation of the meaning of the 1993 Agreement.  Answer, Ex. C, Ex. D; MOL pp. 14–16.  This is a clear admission that the 1993 Agreement is ambiguous, as this Court cannot consider such extrinsic evidence unless the 1993 Agreement is held to be ambiguous.

In any case, the Court should not solely consider two, cherry-picked pieces of

---

[4] Plaintiff submits in the alternative (for reasons stated below) — that if the Court does not consider there to be a material, factual issue in dispute — the clear effect and intent of the 1993 Agreement was to terminate the original grant of rights under the 1985 Agreement and to regrant Plaintiff with new (far more limited) rights regarding the Work, despite the lack of any express term in the 1993 Agreement terminating the 1985 Agreement (which the 1993 Agreement need not include according to *Baldwin* and *DC Comics*).

correspondence, from nearly 30 years after the relevant period, to ascertain the meaning of the 1993 Agreement.  As the 2nd Circuit has warned, on a Rule 12(c) motion, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75.  This is especially so for evidence that *has been* offered by either side, particularly in circumstances where the very two pieces of extrinsic evidence are clearly contradicted by later non-privileged correspondence from the *same individuals* to Defendants.  Discovery, which is ongoing with respect to these very factual issues, as well as testimony, is required and is likely to reveal nearly 40 years of documentation regarding the parties' intentions with respect to the 1985 Agreement and 1993 Agreement.

Further, as was held in *DC Comics*, "the question of whether a substituted agreement effects a discharge of a prior agreement constitutes a triable issue of fact if the opponent offers relevant extrinsic evidence, [but] such an issue of fact does not arise when the opponent offers no evidence as to the parties' intent in making the agreement." *DC Comics*, 2012 WL 4936588, at *7 (citation omitted).  Defendants have already offered such extrinsic evidence in exhibits to their Answer, and there is an abundance of further extrinsic evidence to be uncovered through discovery to be put before the Court.  This provides yet another reason for dismissal of Defendants' Motion.

III.   **In the Alternative, if the Court Holds There is No Factual Dispute and the 1993 Agreement is Unambiguous, the 1993 Agreement Terminates the 1985 Agreement and Regrants Plaintiff Drastically Limited Rights**

Despite the above, if the Court holds that there is no factual issue in dispute in this Action (which Plaintiff submits would be erroneous for reasons above), the terms of the 1993 Agreement effectively terminate and regrant the rights provided to Plaintiff under the 1985 Agreement.

a)   **Analysis of the 1993 Agreement Shows that it Terminates the Rights Granted to Plaintiff Under the 1985 Agreement and Regrants Plaintiff with New Rights in the Work**

As is clear from the analysis of the terms of the 1985 Agreement above, there was an extremely broad grant of rights to Plaintiff in the Work. The 1993 Agreement eviscerated the grant of rights to Plaintiff under the 1985 Agreement. Particularly, the 1993 Agreement, *inter alia*:

- Terminated the original grant to Plaintiff of "all of the motion picture" rights in the Work (including by freezing in perpetuity and preventing any exercise of, remake motion picture rights to the Work, and terminating the economic terms relating thereto in the 1985 Agreement) and then regranted Plaintiff remake motion picture rights in connection with a weekly episodic television series and any spinoff weekly episodic series, albeit subject to the restrictions and economic terms contained in the 1993 Agreement. *See, e.g.,* 1993 Agreement, §§ 7.4, 7.5, 10.6;

- Regranted Plaintiff the right to produce a weekly episodic television series and any spinoff weekly episodic series, subject to the restrictions and economic terms contained in the 1993 Agreement. *See, e.g.,* 1993 Agreement, §§ 7.5, 10.6;

- Terminated all remake, sequel or prequel rights in and to the Work and regranted Plaintiff with the rights to (i) a weekly episodic television series (subject to the restrictions and economic terms contained in the 1993 Agreement), and (ii) exploit the already published original miniseries based on the Work. *See* 1993 Agreement, § 7.6;

- Froze in perpetuity, and prevented any exercise of, all teleplay rights in the Work.

*See* 1993 Agreement, § 8.2;

- Prohibited Plaintiff from creating any "animated" weekly television series or spinoff weekly episodic television series with respect to the Work.  *See* 1993 Agreement, § 7.5.2;

- Prohibited the use of any "any new characters, locations, or events introduced" in Streets of Laredo in any weekly television series or spinoff weekly episodic television series regarding the Work (although, the 1993 Agreement does not define, explain, or provide any detail about what constitutes any "new" character, location or event).  *See* 1993 Agreement, § 7.5.1;

- Granted Plaintiff the right to "conclude" a "merchandising deal for merchandising rights" to the Work (Lonesome Dove).  *See* 1993 Agreement, § 7.8; and

- Regranted significantly different economic terms to Plaintiff with respect to the Work, which were more beneficial to the Author.  *See* 1993 Agreement, § 10.6.

As is clear from this analysis, the 1993 Agreement clearly manifests the parties' intentions for the 1993 Agreement to terminate the grant of rights to Plaintiff under the 1985 Agreement and regrant Plaintiff far more limited rights to the Work, on terms that were more favorable to the Author.

**b)    The Leading Cases on Copyright Termination Favor Plaintiff's Case**

There are few cases dealing with termination of copyright under Section 203 and 304 of the Copyright Act.  Defendants cite to some of those cases, but as above, *Baldwin* and *DC Comics* are additionally instructive.

While the overarching principles espoused in these cases regarding contractual

interpretation under New York law are binding,[5] the relevant courts' analyses of the contractual terms and parties' intentions, and holdings regarding the same are not.  That is because each case involved: (i) different agreements to the 1985 and 1993 Agreements, with different terms; (ii) different parties who each had different intent; and (iii) different surrounding factual circumstances.

If this line of authorities is to be considered as persuasive precedent, *DC Comics* and *Baldwin* are most instructive as they involved implied terminations — analogous to the implied termination of the 1985 Agreement effected by the 1993 Agreement.

In *Baldwin*, the Court held that the parties "manifested" an "intention" to replace the earlier agreement, despite there being no provision in the later agreement expressly terminating the earlier agreement.  The Court derived that intention from a clause which granted "all rights and interests whatsoever now or hereafter known or existing, heretofore or at any time or times hereafter acquired or possessed" regarding the relevant work.  *Baldwin*, 805 F.3d at 28.  The 1993 Agreement specifically and consistently refers to the provisions of the 1985 Agreement and methodically terminates and regrants all of the rights provided to Plaintiff under the 1985 Agreement across no less than 25 separate provisions — often using terminating language such as "notwithstanding" or "in lieu of" anything contained in the 1985 Agreement.  *See, e.g., Sheraton Operating Corp. v. Castillo Grand, LLC*, 34 Misc. 3d 1207(A), 2011 WL 6973239 at *63 (Sup. Ct. 2011) (holding that "the phrase 'in lieu of' means '[i]nstead of or in place of; in exchange or return for.'"); *Bank of New York v. First Millennium, Inc.*, 598 F. Supp. 2d 550 (S.D.N.Y. 2009), *aff'd*, 607 F.3d 905, 561, 569 (2d Cir. 2010) (holding, with respect to the phrase

---

[5] Namely, that "[t]he question is simply whether the parties intended for the new contract to substitute for the old one, and that intention, if otherwise clear, need not be articulated explicitly in the new agreement" as well as that where the parties have "clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 27 (2d Cir. 2015) (citations omitted).

"[n]otwithstanding any other provision," that the "Second Circuit has held that such trumping clauses override other inconsistent provisions.") (citations omitted).

This contrasts the single provision in *Baldwin* which did not refer to *any* specific right granted under the earlier agreement and did not contain *any* terminating language — yet the Court still found that the later agreement manifested the parties' intention to terminate the earlier agreement.  Almost identically to *Baldwin,* the 1993 Agreement in this case regrants Plaintiff the "same rights" granted under the 1985 Agreement (such as the right to make a weekly episodic television series and the already published television series, subject to the restrictions and economic terms contained in the 1993 Agreement), which the *Baldwin* Court held was determinative in holding that the later agreement was "meant to replace" the earlier agreement as "it would make **no sense to have two grants of the same exact rights be operative** at the same time."  *Id.* at 28 (emphasis added).

Similarly, in *DC Comics,* the Court held that the later agreement "superseded" the earlier agreement, despite there being no provision in the later agreement that *even referred to* the earlier agreement.  The Court held that pursuant to the plain text of the 1992 Agreement, which "fully settle[d] all claims to any payments or other rights or remedies which [DC Comics] may have under any other agreement or otherwise" regarding "any copyrights, trademarks, or other property right in any and all work created in whole or in part by . . . Joseph Shuster," and further "grant[ed] to [DC Comics] any such rights," it terminated and replaced the earlier 1938 agreement.  *DC Comics* at *4-*5.  In the present case, the 1993 Agreement is far more comprehensive in terminating and regranting the rights in the 1985 Agreement because it: (i) *expressly refers* to the earlier 1985 Agreement and the rights contained within (unlike the later agreement in *DC Comics*); and (ii) comprehensively terminates and regrants the rights in the Work provided to Plaintiff under the earlier 1985 Agreement (unlike the later agreement in *DC*

*Comics* which included a single blanket, unspecific termination/regrant clause).

As such, *Baldwin* and *DC Comics* are instructive and support the conclusion that the effect of the 1993 Agreement was to terminate all of the rights provided to Plaintiff under the 1985 Agreement, and regrant Plaintiff far more limited rights in the Work.

### c)    McMurtry Exercised his Rights in Accordance with Congress' Intent

In enacting the copyright termination provisions in the Copyright Act, Congress intended for authors to have the right renegotiate copyright grants, and once they did so, a new 35 year period would "start running."  COPYRIGHTS, 17 U.S. Code  §§ 101-1511 (2020), at p. 137. Specifically, Congress intended for Section 203 to "safeguard[] authors against unremunerative transfers" and counter the "impossibility of determining a work's value until it has been exploited." *Id.*

McMurtry (i.e., the Author) terminated the entirety of the earlier 1985 grant, and then renegotiated and regranted to Plaintiff far more restricted rights in the Work which were on financial terms that were more advantageous to McMurtry — squarely according with Congress' intent.  Further, the termination was made at a time shortly after the Lonesome Dove television miniseries was created, giving significant weight and renown to the Work — increasing its value significantly and providing McMurtry with more leverage to renegotiate the rights to the Work on better terms — which again accords with Congress' intent to fairly remunerate authors for their works at a time after the relevant work's value was clearer.

Nevertheless, Defendants' assert that it is a requirement for a copyright owner to "wield the threat of termination" for there to be an effective termination of an earlier agreement.  MOL p. 14.  While this has been held in some of the cases to be a relevant factor in the court's determination, it is not legally determinative and should be given very limited weight in this case because McMurtry had enough time to "safeguard[]" himself against an "unremunerative

transfers" and counter the "impossibility of determining" the Work's value — a reality reinforced by his negotiation of an agreement (i.e., the 1993 Agreement) which terminated a prior grant and regranted a far more restrictive set of rights on more advantageous economic terms.  *Id.*

As such, McMurtry's renegotiation, termination and regrant of the rights he provided to Plaintiff under the 1985 Agreement occurred in accordance with the intent of Congress in enacting the copyright termination provisions.  By exercising his rights, McMurtry restarted the clock with respect to copyright termination for Defendants, which "star[ed] running" from the date of the 1993 Agreement.  COPYRIGHTS, 17 U.S. Code §§ 101-1511 (2020), at p. 137.

For all of the above reasons, if the Court considers that there is no factual issue in this Action, it is clear that the 1993 Agreement terminated the rights granted under the 1985 Agreement, and then regranted Plaintiff a significantly more limited set of rights in the Work. Therefore, Defendants' Termination Notice is invalid.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion should be denied.

Dated:   New York, New York
             November 21, 2022

                                         **PRYOR CASHMAN LLP**


                                         /s/Robert J. deBrauwere
                                         _____
                                         Robert J. deBrauwere
                                         Nicholas Saady
                                         7 Times Square, New York, NY 10036
                                         Tel. (212) 421-4100
                                         rdebrauwere@pryorcashman.com

                                         *Attorneys for Plaintiff*