**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

HALCYON TELEVISION, LLC,

                    Plaintiff,

   - against -

JAMES L. MCMURTRY and NORMA FAYE
KESEY MCMURTRY,

                    Defendants.

Civil Case No. 1:22-cv-04608-AKH

**STIPULATION AND
[PROPOSED] ORDER
CONCERNING PROTOCOL
FOR PRODUCTION OF
ELECTRONICALLY STORED
INFORMATION**

       Plaintiff Halcyon Television, LLC ("Plaintiff") and Defendants James L. McMurtry and Norma Faye Kesey McMurtry ("Defendants") (collectively, the "Parties" and each a "Party"), through their attorneys of record, hereby stipulate as follows:

       WHEREAS, counsel for the Parties have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

       WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

       WHEREAS, the Parties have entered into this Stipulation and [Proposed] Order Concerning Protocol for Production of Electronically Stored Information ("Protocol") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

       **IT IS HEREBY ORDERED** that:

   1.     The Parties are bound by and subject to the terms of this Protocol.

   2.     Definitions.

a.     "Discovery Material" means all products of discovery and all relevant information derived therefrom, including, but not limited to, documents, objects and things, electronic files and attendant metadata, testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

b.      "Email and E-Doc Collections" refers to all documents that are in electronic form at the time of their collection.

c.     "Scanned Collection Documents" means documents that are in hard copy form at the time of their collection.

3.     <u>Cooperation</u>.   The Parties shall conduct discovery in a cooperative manner, including without limitation, by producing ESI in accordance with Fed. R. Civ. P. 26 and 34, and by meeting and conferring in good faith on topics such as identification of key custodians, potentially relevant data sources (including without limitation computers, email accounts, deleted emails, social media accounts, cellular phones, tablets, cloud accounts, and any other electronic devices or internet-based accounts), search methodologies, and such other issues as may arise during the course of discovery.   The Parties shall cooperate in the development of search methodology and criteria, including, if appropriate, the use of computer-assisted search methodology.  Requests for production of ESI and related responses shall be reasonably targeted, proportional to the needs of the case, clear, and as specific as practicable.

4.     <u>Meet and Confer</u>.  Without waiving any rights under any applicable rules or law, the Parties agree to meet and confer in good faith regarding the production of ESI, including without limitation, the time frame for production, the format for production, the search methodologies employed, and whether and to what extent cost-sharing is appropriate.

5.    Search Methodology.

a.    The Parties may employ one or more search methodologies, including without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI.  The Parties have and will continue to meet and confer and attempt in good faith to reach agreement regarding considerations relating to search methodology, including but not limited to the below:

i.    The method of searching and, if applicable, the keywords, terms, and phrases to be searched;

ii.    The identities and numbers of custodians for each side from whom ESI will be collected and searched; and

iii.    The locations of data sources from which ESI will be collected and searched.

6.    Deduplication.  Defendants are only required to produce a single copy of a responsive document, and Defendants should de-duplicate responsive ESI across custodians, provided, however, that all custodians who sent, received or were copied (including blind copied recipients where this information is available) on such email exchange are identifiable.  Each Party should also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain.  Any deduplication tool used by Defendants must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients — where the bcc metadata is available), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

7.    Email Threading.  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression," and may withhold

subordinate threads from review and production provided the fully inclusive thread, including all attachments that were attached by any sender of any email in such e-mail thread, will be produced.

        8.    <u>Privilege Logs and Redaction</u>.

        a.    <u>Email Thread</u>:  An email thread may be logged in a single entry on a privilege log provided that such entry identifies the senders and recipients appearing in the thread.

        b.    <u>Data Load File</u>:  Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

        c.    <u>Privilege Redactions</u>:  A document containing privileged content or work product need not be redacted and/or produced if the content of the document that would otherwise be produced following the privilege redaction is non-responsive.  Documents redacted for privilege and produced need not be logged on a privilege log as long as (a) for emails, the bibliographic information (*i.e.* to, from, cc recipients, date and time) is not redacted, and (b) for all documents, the reason for the redaction is noted on the face of the document (*e.g.*, the Document bears a privilege ledger that, in counsel's opinion, accurately reflects the privileged status of the portion of the Document redacted).

        d.    <u>Privilege Logs</u>:  Documents withheld on the basis of privilege and/or work product protection may be grouped in categories based on content, and a categorical privilege log prepared, including a privilege description for each category.  The description shall include a summary of the facts supporting the privileged or protected status of the documents included within the category.  The categorical log shall also include the basic metadata for each document within the category (e.g., date/time sent/received/created/last accessed/last modified, to/from/cc, subject line/file name, and document type).

e.      <u>Documents Presumptively Not to Be Logged on Privilege Log</u>.   The following documents that may be withheld on the basis of privilege and/or work product protection presumptively need not be included on a privilege log:

i.      Work product created by counsel retained in relation to this matter or by an agent of counsel retained in relation to this matter; and

ii.     Privileged Communications solely between counsel retained in relation to this matter and its client.

f.      <u>Dispute Resolution</u>.   After the receipt of a privilege log, any Party may dispute a claim of privilege.   However, prior to any submission of any dispute to the Court, the Party disputing a claim of privilege shall provide in writing the identification of the document(s) for which it questions the claim of privilege and the reasons (including legal support) for its assertion that the documents are not privileged.   Within 14 days, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege (including legal support).   The Parties will then meet and confer in good faith as to the claims of privilege.   If agreement has not been reached after the parties have met and conferred in good faith, any Party may thereafter submit the dispute to the Court for a determination as to privilege.

9.      <u>Production Format for ESI</u>.

a.      <u>General Provisions</u>.   Unless the Parties agree to a different format other than that described in this Section, documents originally collected as electronic files will be converted to Group IV *.tif image files at 300 dpi or greater.   Original document orientation will be maintained (*i.e.,* portrait to portrait and landscape to landscape) except for spreadsheets, which will be produced in accordance with paragraph 9(g), *infra*.   Each *.tif file will be assigned a unique name matching the Bates number of the corresponding page.   Such files will be grouped in folders of 1,000 *.tif files each.   Separate folders will not be created for each document.   After such

production in image file format is complete, a Party must demonstrate a particularized need for production of electronic documents in any other format.

       b.    <u>Color</u>.  Except as otherwise provided in this protocol, documents need not be produced in color initially.  However, the Parties reserve the right to seek in good faith replacement images containing color in *.jpg format where applicable.  The producing party shall not unreasonably deny such requests, but need not make such production until the parties reach agreement regarding any additional costs associated with the production of documents in color.

       c.    <u>Document Text</u>.  If electronic files do not contain text that is redacted, including but not limited to the assertion of a privilege or other protection from disclosure, then the entire document text will be produced as follows:  (i) on a document level basis; (ii) named for the beginning Bates number; (iii) in a separate Text folder with sub-folders so each folder holds 1000 *.txt files; along with (iv) a load file that contains the Bates number followed by a comma space and then the full path to the *.txt file, including the name of the *.txt file.  Redacted documents will be OCR'd, and all such OCR text will be Unicode-compliant (UTF-8).

       d.    <u>Parent-Child Relationships and Embedded Documents</u>.  Parent-child relationships (the association between emails and attachments) will be preserved to the extent possible.  Email attachments will be consecutively produced with the parent email record. Substantive embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded.

       e.    <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.,* "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file was processed.

f.      <u>Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be processed to *.tif images.  Word processing files processed to *.tif format must include any tracked changes and/or comments showing.  The requesting Party may make reasonable and good faith requests for particular word processing files to be produced in native format.  If the format of a word processing file cannot be maintained when processed to *.tif, the work processing file should be produced in native format.

g.      <u>Spreadsheet Files</u>.  All spreadsheet files, including without limitation Microsoft Excel files (*.xls and *.xlsx) will be produced in native format, with the file named with a unique identification (Bates) number for the document with the appropriate extension based upon the original file, except in the case of redacted Excel files, which may be tiffed for redaction.  In the event lengthy Excel files contain relevant privileged content that can more efficiently be addressed through native file redactions, the Parties will meet and confer regarding the planned approach for such redactions.

h.      <u>Presentation Files</u>.  Presentation files, including without limitation Microsoft PowerPoint presentation files (*.ppt and *.pptx) will be processed to *.tif images showing comments, hidden slides, speakers' notes, and similar data.  The requesting Party may make reasonable and good faith requests for particular presentation files to be produced in native format.

i.      <u>Database Records</u>.  To the extent that any Party requests information that is stored only in a database or database management system, such information will be produced by querying the database for discoverable information and generating a report or a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting

Party.  The Parties will meet and confer regarding the proper mode of production of any database or database management system.

        j.    <u>Non-Standard Files</u>.  Non-standard electronic files, include, but are not limited to, transactional data, database files, audio and video files, and proprietary applications not publicly available.  The Parties agree to meet and confer in good faith and reach an agreement concerning a reasonable production format for such files and also about whether and to what extent cost-sharing is appropriate prior to any such production of non-standard files.

        k.    <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Eastern Standard Time (EST).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with paragraph 9(c).

        l.    <u>Bates Numbering</u>.  Bates numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

        i.    be consistent across the production;

        ii.    contain no special characters; and

        iii.    be numerically sequential within a given document.

Attachments to documents (or slipsheets in the case of withheld documents) will be assigned identification numbers that directly follow the identification numbers on the documents to which they were attached.

Bates numbers should be a combination of an alpha prefix along with an 8 digit number (e.g. ABC00000001).  The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.  Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

m.   Load File Formats.   ESI and Scanned Collection documents will be produced in Concordance load file format (DAT, OPT) consistent with Paragraph 9(c).  Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

n.   Metadata to be Produced.   For all documents collected, the following metadata fields will be produced in a load file for each document to the extent that such information is available at the time of collection and processing, except to the extent that a document has been produced with redactions.

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|---|---|---|---|---|
| BEGBATES [Key Value] | ABC 000001 | Yes | Yes | First Bates number of email/doc |
| ENDBATES | ABC 000008 | Yes | Yes | Last Bates number of email/doc |
| BEGATTACH | ABC 000009 | Yes | Yes | First Bates number of attachment (s) |
| ENDATTACH | ABC 000015 | Yes | Yes | Last Bates number of attachment (s) |
| CUSTODIAN(s) | John Beech | Yes | Yes | Mailbox(es) where the email resided |
| FROM | John Beech | N.A | Yes | For email |
| TO | Janice Birch | N/A | Yes | For email |

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|---|---|---|---|---|
| CC | Frank Maple | N/A | Yes | For email |
| BCC | John Oak wood | N/A | Yes | For email |
| SUBJECT | Changes to Access Database | N/A | Yes | Subject of the email |
| TITLE | Changes to Access Database | N/A | Yes | Title of the E-Doc |
| DATE SENT | 10/10/2005 | N/A | Yes | Date the email was sent |
| TIME SENT | 07:05 PM | N/A | Yes | Time the email was sent |
| TIMERCVD | 07:05 PM | N/A | Yes | Time the email was received |
| FILE NAME | File.doc | N/A | Yes | File name |
| FILE_EXTEN | MSG(email) DOC (attachment - ex.  Word document) | N/A | Yes | The tile extension will vary depending if the original document is a parent email or a child attachment or a loose E-Doc |
| AUTHOR | John Beech | N/A | Yes | Attachment or loose E-Doc Metadata; Author of the original native file. |
| DATE CREATED (C) | 10/08/2005 | N/A | Yes | For attachment or loose E-Doc - in properties. For scanned collections this is the date of document. |
| DATE_MOD(M) | 10/09/2005 | N/A | Yes | For attachment or loose E-Doc – in properties |
| DATE ACCESSED (A) | 10/10/2005 | N/A | Yes | For attachment or loose E-Doc – in properties |
| TIMECREATED | 07:05PM | N/A | Yes | For attachment or loose E-Doc – in properties |
| TIMELASTMOD | 07:05PM | N/A | Yes | For attachment or loose E-Doc – in properties |
| FILESIZE | 32604160 | N/A | Yes | Size of file |
| FULLTEXT | Fulltext\00l\0 01\ ABC 000001.txt | Yes | Yes | Text of the email or attachment or loose E-Doc |

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|---|---|---|---|---|
| NativeLink | Natives\001\001\ ABC 000001.XLS | N/A | Yes | Path where Native file is located on production delivery media |
| MD5HASH | C8054025235 FBRA26E4B C242AEF543 B6 | N/A | Yes | Incoming MD5 of Original (native) file |
| CONFIDENTIAL | Confidential | Yes | Yes | Text of confidentiality designation, if any |
| HIGHLY CONFIDENTIAL | Highly Confidential | Yes | Yes | Text of confidentiality designation, if any |
| PARENT DATE | 10/10/2005 | N/A | Yes | For attachments, date the parent document was sent |

10.     <u>Production Format for Scanned Collection Documents</u>.   Scanned Collection Documents (those that exist in hard copy form at the time of their collection) will be produced in accordance with Fed. R. Civ. P. 34(a), or as otherwise agreed to by the Parties.  If copied or scanned, Scanned Collection Documents will be produced as follows:

a.     <u>Images</u>

i.     Images should be Black/White single-page Group IV TIF images (except as provided in paragraph 9(b)).

ii.     Should color replacement images subsequently be requested and agreed upon, they should be produced in *.jpg format.

iii.     Files should be named to match the image key plus the *.tif extension or, for color images, the *.jpg extension.

iv.     LZW compression should not be used for any image files.

v.     Documents should not be split across directories.

vi.      There should be no more than 1,000 image files per directory unless necessary to prevent a document splitting across a directory.

b.      OCR

i.      OCR should be performed on a document level and provided in document-level text files.  OCR should not be delivered in the data load file or other delimited text file.

ii.      OCR text files should be named to match the Bates number of the first page of the document to which the OCR text corresponds.

iii.      A load file containing the path to the corresponding document-level text file should be provided in the following format: ABC000001, ABC001\OCR\00\00\ABC000001.txt.  (A space exists between the comma and the full path).  This information should be included in the .dat load file per the load file format below.

c.      Image/Data Load Files

i.      A Concordance (*.dat) load file and an Opticon (*.opt) load file should be provided.

ii.      All load file names should contain the CD volume name.  Additional descriptive information may be provided after the volume name.   For example, ABC001.dat would be acceptable.

iii.      Any fielded data provided in a load file should use the Concordance default delimiters.  The semi-colon (;) should be used as the multi-entry separator.

iv.      Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are provided in the file.

11.    <u>Encryption</u>.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

12.    <u>Authenticity and Admissibility</u>.  Nothing in this Protocol shall be construed to affect the relevance, authenticity or admissibility of any document or data.  All objections to the relevance, authenticity or admissibility of any document or data are preserved and may be asserted at any time.

13.    <u>Disclosures of Protected Discovery Material</u>.  The Parties will produce Confidential and Attorneys' Eyes Only discovery material subject to the entry of, and in accordance with the terms of, appropriate protective and Rule 502(d) orders in this Action.

14.    <u>Review for Responsiveness and Privilege</u>.  With respect to ESI, the fact that a document is captured by the application of a particular search methodology or search term does not automatically mean that such document is responsive to any propounded discovery request or otherwise relevant to this action.  The discovery requests, objections thereto, agreements of the parties and any Court orders shall govern whether a particular document is to be produced.  The Parties need only produce responsive and non-privileged documents.

15.    <u>Processing of Third-Party Documents</u>.  A party that issues a nonparty subpoena ("<u>Issuing Party</u>") shall include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth in Clauses 5 to 11 of this Protocol.  The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties.  Nothing in this Stipulation is intended to or should be interpreted

as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

16.     <u>Inadvertent Production of Privileged Materials</u>.  The Parties shall make a good faith effort to review the documents they produce for privilege and to withhold all documents that they claim are privileged or otherwise protected from disclosure.  However, if a producing Party inadvertently produces information, documents, objects or things that it considers to be, in whole or in part, privileged or protected material, such inadvertent production does not constitute a waiver of any applicable privilege or protection, and such Party may retrieve such information or materials or parts thereof by means of the procedures described below.  No Party shall use any such retrieved information or materials in any way in connection with the prosecution or defense of this action except as provided herein.

17.     <u>Confidential and Attorneys' Eyes Only Information</u>.  For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated Confidential or Attorneys' Eyes Only.

18.     <u>Modification</u>.  This Protocol may be modified by written agreement of the Parties, subject to and/or by order of the Court.  If a dispute arises related to the interpretation or modification of the Protocol, the Parties shall first attempt to resolve the dispute between themselves.  If, however, the Parties are unable to resolve the dispute after a good faith effort, the Parties may request the assistance of the Court with proper notice to all Parties.

19.     <u>Reservation of Rights</u>.  The Parties reserve all rights available to them under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of Court for the United States District Court for the Southern District of New York, and applicable judicial practice standards.

Dated: February 21, 2023
       New York, NY


**SO STIPULATED BY THE PARTIES:**


      **PRYOR CASHMAN LLP**                **REITLER KAILAS & ROSENBLATT LLP**

                                            */s/ Julie B. Wlodinguer*

      Robert J. deBrauwere                Robert W. Clarida
      Nicholas Saady                        Julie B. Wlodinguer
      7 Times Square                       885 Third Avenue, 20th Floor
      New York, New York 10036        New York, New York 10022
      Tel. (212) 421-4100               Tel. (212) 209-3050
      Fax. (212) 326-0806              Fax. (212) 371-5500
      nsaady@pryorcashman.com         rclarida@reitlerlaw.com
                                            jwlodinguer@reitlerlaw.com

      *Attorneys for Plaintiff*

                                              *Attorneys for Defendants*


**IT IS SO ORDERED:**


Dated: _____                  _____

                                        HON.  ALVIN K. HELLERSTEIN
                                        UNITED STATES DISTRICT JUDGE